HARRY L. LINNECKE, MRS. LAWRENCE SIRI, GUS BESSO, ELWOOD RATH AND EARL D. REED, APPELLANTS, *v.* DEPARTMENT OF HIGHWAYS, STATE OF NEVADA, RESPONDENT.

No. 4233

January 13, 1960                    348 P.2d 235

*Ernest S. Brown* and *Samuel B. Francovich,* of Reno, for Appellants.

*Roger D. Foley,* Attorney General, *William E. Freedman* and *Earl Monsey,* Deputy Attorneys General, and *Bruce R. Thompson,* Special Deputy Attorney General, for Respondent.

## OPINION

By the Court, BADT, J.:

This appeal is from judgment of the lower court denying to appellants, plaintiffs below, an injunction restraining the Department of Highways of the State of Nevada

from constructing or expending state funds for the construction of what is known as the Third Street Freeway in Reno, or for the acquisition of property by eminent domain proceedings for a right of way for the location of the freeway.

The action was brought by appellants as taxpayers, on behalf of themselves and all others similarly situated.

Appellants alleged that shortly after November 26, 1957 the State Highway Department recommended to the Federal Bureau of Public Roads, under authority of the Federal Aid Highway Act of 1956, that the Third Street Freeway be constructed; that in September 1958 the Federal Bureau of Public Roads approved such highway, to cost approximately 36 million dollars, which included construction from the California state line some 21 miles easterly through Verdi, Reno, and Sparks, Nevada; that its cost was to be paid 95 percent from federal funds and 5 percent by state funds, with the state paying 17 percent of costs of grade-crossing structures. The complaint then quoted sec. 116(c) of the Federal Aid Highway Act of 1956 [Now 23 U.S.C.A. sec. 128(a)] as follows:

"(c) Public Hearings—Any state highway department which submits plans for a federal aid highway project involving the bypassing of, or going through, any city * * * shall certify to the Commissioner of Public Roads that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic effects of such a location: * * *" The section then requires that a copy of the transcript of such hearing be submitted with the certification.

The complaint further recites that the State Highway Department "never had a public hearing affording an opportunity for taxpayers, property owners, and citizens affected to present evidence respecting the economic effect of such location"; and that the State Department of Highways was accordingly without jurisdiction to recommend said Third Street Freeway to the Federal Bureau of Public Roads or to expend any public funds

or exercise the right of eminent domain in the premises; that no notice of a public hearing to determine the economic impact upon the area of the proposed freeway was ever given as required by law; that unless restrained the State Department of Highways will proceed with such construction and eminent domain proceedings, resulting in the destruction of private property and irreparable injury, loss, and damage to plaintiffs and others similarly situated.

The trial court found:

"That there was published in the Reno Evening Gazette and in the Nevada State Journal a 'Notice of Public Hearing' in words and figures as follows:

" 'Notice is hereby given that on the 26th day of November, 1957, in accordance with Section 116(c) of the Federal Aid Highway Act of 1956, the Nevada State Highway Department will hold a public hearing at the State Building Auditorium in Reno, Nevada, regarding the proposed construction of * * * a portion of the Nevada Federal Aid Interstate and Defense Highway System from the west city limits of Reno to the east city limits of Reno.

" 'The proposed construction consists of grading the roadbed, installing drainage structures, railroad separations, interchanges and placing surface courses on a four lane highway with complete control of access.

" 'Plans will be on display in the State Building Auditorium in Reno, Nevada, from 12:00 P. M. to 8:00 P. M. on November 22nd, 23rd and 25th, 1957.

" 'All persons interested are hereby notified to be and appear at this meeting on the 26th of November at 2:00 P. M. and be heard.

" 'Dated this 30th day of October, 1957.

" 'H. D. Mills, State Highway Engineer.' "

It further found that such notice was published in the (Reno) Nevada State Journal November 13 and 23, 1957, and in the Reno (Nevada) Evening Gazette November 12 and 22, 1957, and that pursuant to such notice a hearing was held in Reno November 26, 1957,

a transcript thereof transmitted to the Bureau of Public Roads on January 24, 1958; that the letter of transmission stated that "careful consideration has been given to the economic effect of the proposed route on both of the cities of Reno and Sparks," and that on September 3, 1958 the Federal Bureau approved the Third Street route. It should be noted further that in addition to the official notices of the meeting there was extensive local newspaper, radio, and television coverage of the proposed meeting, and that a week prior thereto, 30,000 copies of a pamphlet entitled "You and Your Freeway," containing a detailed map and a description of the several routes proposed, were distributed to utility users in the Reno-Sparks area.

Appellants attack the sufficiency of the notice for its failure to designate that the economic effects of the location would be considered. They further attack the actual hearing as held as not complying with the tradition of judicial proceedings in which evidence is received and weighed by the trier of facts, to the end that a decision may be made in good conscience, in consideration of the evidence and, guided by that alone, to reach a conclusion uninfluenced by extraneous considerations; that without such, the determination is void.

The learned district judge filed a written opinion in denying the injunctive relief sought, holding first, that "the giving of notice, the holding and the conduct of the public hearing, are matters of concern to the taxpayers of Nevada only insofar as they are conditions precedent to the authorization and grant of federal aid to the ultimate construction. If the notice should be insufficient, if the hearing is inadequate, if the required certificate is lacking, then the Bureau of Public Roads must determine that deficiency * * *." He held, secondly, that in any event because of "the hearing had, the consideration given to economic effects, and the certification made by letter, [these things] were sufficient to meet the broad and general requirements, and that there had been substantial compliance with the provisions of [the federal] act."

We have concluded that the judgment of the lower

court was correct for both of the reasons given. The only requirement for a public hearing is the one quoted from the applicable section of the Federal Aid Highway Act. No such hearing is required by any such statute of this state. In a similar case the Supreme Court of Delaware had the same two questions for consideration. It said: "But all the criticism of the public hearings is beside the point. The state law requires no public hearing. The federal statute, as already noted, does require such a hearing. The State must comply with the federal law to obtain federal funds. It has so complied, because the project has been approved by the Bureau of Public Roads. The argument is beside the point." Piekarski v. Smith, Del., 153, A.2d 587, 593. To like effect is Binghamton Citizens Penn-Can R. 17 H. C. v. Federick, 7 A.D.2d 170, 180 N.Y.S.2d 913. In Hoffman v. Stevens, U.S. District Court M.D.Pa., 177 Fed.Supp. 898, 903, the court held that: "At best, failure to afford a hearing might give rise to a dispute between the Secretary of Commerce and Pennsylvania Department of Highways as to allocation and use of federal funds." The court, referring to Piekarski v. Smith, supra, affirmed in 153 A.2d 587, emphasized the fact that under state law, absent federal aid, such hearings are not required or held.

Section 116 (c) of the Federal Highway Act does not specify the form of notice to be given. We cannot agree with appellants' contention that the notice was fatally defective because it failed to state that at the public hearing consideration would be given to the economic effects of the location of the freeway. It is unreasonable and unrealistic to assume that persons interested in such economic effect would remain away from the meeting because they concluded from the form of the notice that they would not be heard upon the point. The transcript of the public meeting is before us and it is evident therefrom that none of the witnesses felt circumscribed in this regard. The transcript of the meeting contains some 50,000 words. Forty-five witnesses testified, and in

addition, 21 statements, resolutions, and papers were offered and made a part of the record. It is indicated that the meeting followed a similar meeting held in Sparks, although no transcript of the Sparks record is before us. Anyone at the meeting desiring to be heard was given an opportunity to speak. Some 15 or more of the statements and arguments heard were directed to the economic effects of the selection of a route for the free-way. The economic stability and sound growth of the city of Reno, the damage to hotels, motels, restaurants, and other businesses established along a prior route, the wiping out of hotels, parts of schools, trucking lines, etc. by the proposed right of way, the displacing of business, the loss of tax revenue, the waste in excessive costs, the necessary removal of between 300 and 400 structures, the reduction of value of fine homes, the loss of tax money needed to pave streets and improve the existing sewer system, were all urged.

These and many other views, some favorable and some unfavorable, indicate most clearly that much of the meeting was directed to consideration of the economic effects of the location of the freeway.

Appellants contend that the nature of the required hearing was that of a quasi-judicial hearing and that the hearing as held was in this respect fatally defective. With this we cannot agree. On the contrary, we are satisfied that the public hearings contemplated by the federal act were for the purpose of informing the residents of the area of the locations being considered by the state so that such residents might be given the opportunity to express their views, including their views of the economic effects of the location. This is indicated by the language used by the House Committee on governmental operations in the instant matter, stating that the hearing was to give opportunity for public expression. (House Report, No. 292, 86th Congress, First Session, p. 16) See Piekarski v. Smith, supra. Alabama Power Company v. City of Fort Payne, 237 Ala. 459, 187 So. 632, 123 A.L.R. 1337, and Morgan v.

United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288, relied upon by appellants as holding that section 116 (c) of the federal act contemplates a quasi-judicial hearing, are not in point.

The judgment of the district court denying injunctive relief is affirmed. No costs are awarded.

McNAMEE, C. J., and PIKE, J., concur.