**NASHVILLE I–40 STEERING COMMIT-TEE, etc., et al., Plaintiffs-Appellants,**

v.

**Buford ELLINGTON, Governor, et al., Defendants-Appellees.**

No. 18288.

United States Court of Appeals
Sixth Circuit.

Dec. 18, 1967.

As Amended Dec. 26, 1967.

Certiorari Denied Jan. 29, 1968.

See 88 S.Ct. 857.

180

Jack Greenberg, New York City, and Avon N. Williams, Jr., Nashville, Tenn., for appellants, Avon N. Williams, Jr., Nashville, Tenn., James M. Nabrit, III, Michael Davidson, Charles H. Jones, Jr., New York City, on the brief.

Milton P. Rice, Deputy Atty. Gen., Nashville, Tenn., for the State, George F. McCanless, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Tenn., on the brief.

Joel Moseley, Asst. Metropolitan Atty., Nashville, Tenn., for the mayor, Neill S. Brown, Director of Law, Nashville, Tenn., on the brief.

Before PHILLIPS, PECK and COMBS, Circuit Judges.

PER CURIAM.

This is an appeal pursuant to ·28 U.S.C. § 1292(a) (1) from the order of the District Court denying a preliminary injunction to restrain officials of the State of Tennessee from constructing a section of Interstate Highway I-40 along its planned route in North Nashville, which is a predominantly Negro area of Nashville, Tennessee. The section of the proposed highway under attack is approximately 3.6 miles long and is a link in a highway extending from Memphis in West Tennessee through and beyond Ashville, North Carolina.

Jurisdiction of the District Court was invoked pursuant to 28 U.S.C. §§ 1331 (a) and 1343(3) and 42 U.S.C. §§ 1981, 1982, 1983 and 2000d. Redress is sought for an alleged deprivation of rights under the Fifth Amendment and the due process and equal protection clauses of the Fourteenth Amendment.

Appellants are members of an unincorporated association of some thirty Negro and white businessmen, teachers, ministers, civic and professional leaders, and residents of North Nashville. They sue on behalf of themselves as individuals, in the name of their association, and on behalf of the community they represent. The named appellants include faculty members of four Nashville universities and colleges, including Fisk University, Meharry Medical College, Scarritt College and Vanderbilt University.

The defendants in the District Court were Buford Ellington, Governor of Tennessee, Charles W. Speight, Commissioner of Highways of the State of Tennessee, and Beverly Briley, Mayor of the Metropolitan Government of Nashville and Davidson County, Tennessee. The District Court dismissed the action as to Mayor Briley.

The complaint charges that construction of the highway segment as planned will cause substantial damage to the North Nashville community; erecting a physical barrier between this predominantly Negro area and other parts of Nashville.

Two basic issues are raised by the complaint:

(1) That State officials failed to hold a public hearing with proper notice and failed to consider the economic effects of the proposed route as required by Section 116(c) of the Federal-Aid Highway Act of 1956, and the rules and regulations of the United States Department of Transportation (then the Bureau of Public Roads); and (2) that the selection of the route in question was made arbitrarily or with the purpose of discriminating against the Negro or low socio-economic segments of Nash-

ville's population so as to damage and in part destroy the Negro business community of Nashville, injure predominantly Negro educational institutions, and impose other irreparable harm upon the North Nashville community.

The complaint avers that appellants first requested a delay of ninety days in the invitation for bids and that this delay was denied both by the Tennessee Commissioner of Highways and the United States Department of Transportation. This suit was filed October 26, 1967, after advertisement for bids had been made. Bids were scheduled to be received October 31, 1967.

District Judge Frank Gray, Jr. refused to issue a temporary restraining order but promptly began a hearing on the application for preliminary injunction. This hearing was started Monday, October 30, 1967, and continued through Wednesday, November 1. In the meantime bids were received as scheduled, but State officials agreed not to let the contract, pending the order of the District Court on the application for preliminary injunction.

After the hearing, the record of which encompasses 538 typewritten pages of evidence and numerous and voluminous exhibits, the District Judge filed a memorandum opinion on November 2, 1967, resolving both issues of fact against plaintiffs, holding:

(1) That a public hearing, in conformity with § 116(c) of the Federal-Aid Highway Act of 1956, was held by State Highway officials; and

(2) That "[m]ost of the evidence presented by plaintiffs goes to the wisdom and not to the legality of the highway department's decision;" that acquisition of rights of way has been under way for more than two years and substantially all the rights of way have been acquired; that plaintiffs have not shown that the selection of the proposed route amounts to a denial of due process of law or equal protection of the law; and that no adequate basis has been laid for the use of the injunctive power of the Court.

In addition to denying the application for preliminary injunction, the District Judge overruled a motion for injunction pending appeal.

This Court entered a stay order requiring that the status quo be maintained and directing that the contract not be let pending our hearing. At the time this appeal was filed the docket for the Court's December session had been scheduled. Because of the great public interest involved, this case was advanced on the docket and specially set for argument during the December session.

■ Appellees urge that appellants have no standing to maintain this action. We reject this contention. Scenic Hudson Preservation Conference, v. Federal Power Commission, 354 F.2d 608 (2d Cir.), cert. denied, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540. Appellees further contend that this case cannot be maintained as a class action. The District Court has not yet passed upon this issue, and it is not before this Court for consideration.

### 1) Scope of review

■ First we consider the scope of review in an appeal under 28 U.S.C. § 1292(a) (1) from the action of a District Court in denying a preliminary injunction. This statute confers the right of appeal to the Court of Appeals from an interlocutory order of a District Court refusing to grant an injunction.

■ In American Federation of Musicians v. Stein, 213 F.2d 679, 683 (6th Cir.), cert. denied, 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687, this Court approved the following statement:

"The granting or denial of a temporary injunction pending final hearing is within the sound judicial discretion of the trial court, and upon appeal an order granting such an injunction will not be disturbed unless contrary to some rule of equity or the result of an improvident exercise of judicial discretion."

The rule is stated as follows in 7 J. Moore, Federal Practice, ¶ 65.04 [2], at 1630–31 (2d ed. 1966):

"A motion for an injunction pendente lite is addressed to the judicial discretion of the district court. While the grant or denial may raise only an issue of law and be reviewable as such, ordinarily discretion will be involved and when it is the test on appeal is not whether the appellate court in its discretion would have granted or denied the injunction, but whether the district court has abused its discretion. Accordingly, unless the district court has proceeded improperly, where discretionary action of the district court is involved, its action will not be lightly disturbed on appeal; * * *"

"Reversal on such an appeal can be only for abuse of discretion." 3 W. Barron & A. Holtzoff, § 1440 at 509, 510 (Wright's ed. 1958).

This rule has been followed and applied repeatedly by this and other Circuits. A few selected cases applying this rule are: Hornback v. Brotherhood of Railroad Signalmen, 346 F.2d 161 (6th Cir.); Wooten v. Ohler, 303 F.2d 759 (5th Cir.); Progress Development Corp. v. Mitchell, 286 F.2d 222, 229 (7th Cir.); and Holzer v. United States, 244 F.2d 562, 564 (8th Cir.). A recent decision in which the District Court refused to grant a preliminary injunction to restrain construction of a portion of interstate highway is Road Review League, Town of Bedford v. Boyd, 270 F.Supp. 650 (S.D.N.Y.).

■ Appellants rely upon United States v. Beaty, 288 F.2d 653 (6th Cir.), where this Court reversed the action of the District Court in refusing to grant a temporary injunction, holding that the District Court abused its discretion by refusing to apply applicable law under undisputed facts. We hold that this is not the situation in the present case.

### 2) Public Hearing

■ We next consider the question of whether the District Judge abused his discretion in refusing to grant a preliminary injunction on the ground that State officials failed to hold a public hearing with proper notice as re-

quired by the Federal-Aid Highway Act. The provision of the Federal-Aid Highway Act of 1956, § 116(c), 70 Stat. 385, relating to public hearings is set forth in the margin.[1]

The record shows that a public hearing was held in the County Courthouse at Nashville on May 15, 1957, presided over by State Highway Commissioner William M. Leech, now a State Chancery Court Judge, who testified at some length in the District Court. Commissioner Leech opened the hearing with this comment:

> "Ladies and Gentlemen, this Hearing this morning has been called for the purpose of hearing statements complying with Section 116(c) of the Public Laws 627 of the 84th Congress, generally known as the Federal Highway Act of 1956, as it relates to the economic effect of the Interstate System in the city of Nashville and Davidson County, both inside and outside the city limits, comprising of an inner loop and an outer loop with five legs going out to be the fourth part of the entire Interstate System. This is the plan that has been developed by the consultant engineering firm of Clarke and Rapuano in connection with the Tennessee Highway Department and the Bureau of Public Roads. I think, here in Nashville, considerable publicity has been given to the planning and providing of this expressway system."

The evidence discloses that this hearing conducted in Nashville was similar to those conducted in all other counties of Tennessee crossed by any part of the interstate highway system.

The proof indicates that the hearing was well attended even though formal notice was given by supplying copies to the County Judge and Mayor and by posting copies in the main post office and five post office stations. These included the North Station Post Office at Sixth Avenue and Monroe Street which serves North Nashville, but is described as being located in a "white" neighborhood near the predominantly Negro community. Neither the statute nor the regulations of the Bureau of Public Roads prescribed how notice of hearings should be given.

We consider this to be an unsatisfactory way to give notice of a public hearing, especially when for some unexplained reason the notice announced the hearing for May 14, and it actually was held the following day, on May 15.

Based upon the record before us, however, although the notices were unsatisfactory, we are convinced that the District Judge would have been justified in concluding that no literate citizen of the Nashville community could have been unaware since 1957 of the proposed route of the interstate highway, including the approximate location of the section now under attack. The record contains copies of many newspaper clippings from 1957 forward, setting forth maps and descriptions of the proposed route. Judge Leech testified that he made many public speeches concerning the proposed system, including an address before a Negro civic group in North Nashville, and that there was much newspaper publicity concerning the proposed routes. Some of the appellants testified that they had known the general location of the proposed route through North Nashville long before the complaint in this action was filed.

The hearing was recorded and subsequently transcribed in manuscript form.

---

1. "(c) Public Hearings.—Any State highway department which submits plans for a Federal-aid highway project involving the by-passing of or going through, any city, town, or village, either incorporated or unincorporated, shall certify to the Commissioner of Public Roads that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic effects of such a location: *Provided,* That, if such hearings have been held, a copy of the transcript of said hearings shall be submitted to the Commissioner of Public Roads, together with the certification."

(This provision of the 1956 statute does not differ materially from the later statute which is codified at 23 U.S.C. § 128).

A copy was filed with the then Commissioner of Public Roads. A copy of the manuscript was received as an exhibit in this proceeding. It leaves much to be desired as a manuscript of a public hearing, since the recording device failed to pick up many questions from the audience. The manuscript contains only the statements and answers of the Commissioner and other representatives of the highway department and what was said from the platform where the microphones were located.

Nevertheless, we cannot say that the District Court abused its discretion in denying a preliminary injunction on the ground that no public hearing was held in compliance with at least the minimum requirements of Section 116(c) of the Federal-Aid Highway Act of 1956 (footnote 1) and that appellants were not deprived of any constitutional rights by this procedure. Cf. Futch v. Greer, 353 S.W.2d 896 (Tex.Ct.Civ.App.), cert. denied, 372 U.S. 913, 83 S.Ct. 728, 9 L.Ed.2d 721; Linnecke v. Department of Highways, 76 Nev. 26, 348 P.2d 235; Piekarski v. Smith, 37 Del.Ch. 594, 147 A.2d 176; Hoffman v. Stevens, 177 F.Supp. 898 (M.D.Pa.).

3) Consideration of economic effects

■ Appellants assert that State highway officials failed to comply with the statute in that they did not consider the economic effects of the proposed route as required by the statute (footnote 1).

As set forth above, the Commissioner of Highways opened the public hearing on May 15, 1957, by stating that one of the purposes of the meeting was to hear statements concerning the economic effects of the proposed route of the interstate system both inside and outside the city of Nashville.

Thereafter, the attorney for the State highway department made the following certification:

"I certify that I am an official of the Department of Highways and Public Works of the State of Tennessee and that the above transcript of the public hearing heretofore conducted regarding the location of the above mentioned project has been read by me. I further certify that said Department has considered the economic effects of the location of said project and that it is of the opinion that said project is properly located and should be constructed as located."

During the three day hearing convened with commendable haste in view of the circumstances the District Court had no practical way of determining to what extent highway officials gave consideration to the economic effects of the proposed route. The record discloses that the attorney who made the foregoing certification is now dead. Former Commissioner Leech testified that his department employed a reputable firm of engineers and that exhaustive studies were made by this firm and by personnel of the highway department.

Under these circumstances we hold that justification existed for reliance upon the presumption of regularity of public records and compliance by public officials with duties imposed upon them by statute. Helpern v. McMorran, 50 Misc.2d 134, 270 N.Y.S.2d 656.

4) Alleged racial discrimination

■ Since the date of the public hearing in 1957 approximately 1,100 parcels of property along the proposed route have been acquired both from Negro and white citizens. The costs of acquisition, together with the engineering costs to date, total approximately $10,000,000. Only 25 parcels remained to be acquired as of the date of the hearing before Judge Gray. No discrimination is charged or shown in the condemnation or purchase of property owned by Negro and white citizens or in payment of just compensation therefor.

We find that the record fails to show any intent or purpose of racial discrimination in the selection of the proposed route, that the findings of fact of the District Judge are not clearly erroneous

but to the contrary are supported by substantial evidence, and that the District Judge did not abuse his discretion in refusing to deny a preliminary injunction on grounds of racial discrimination.

5) *Claimed deprivation of due process and equal protection as matter of law*

 Appellants contend that, regardless of intent, the result of the construction of the proposed highway would be so injurious to the residents and institutions of the area as to deprive appellants and those whom they represent of due process and equal protection as a matter of law. We do not agree with this contention. In the absence of proof of racial discrimination, we do not consider this matter to be a justiciable issue. The routing of highways is the prerogative of the executive department of government, not the judiciary.

As said by the Supreme Court in Berman v. Parker, 348 U.S. 26, 35, 75 S.Ct. 98, 99 L.Ed. 27: "It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area."

The District Judge was on sound legal ground in refusing to substitute his judgment for that of highway officials in the selection of a route for a highway. Road Review League, Town of Bedford v. Boyd, supra, 270 F.Supp. 650, 663 (S.D.N.Y.)

It would be virtually impossible to select a route for an interstate highway through a congested metropolitan area without working hardships upon many citizens. Appellants suggest possible alternative routes which they contend would avoid the unfortunate economic consequences which the proposed route will impose upon the North Nashville area. Alternative routes undoubtedly would impose hardships upon others. The minimizing of hardships and adverse economic effects is a problem addressing itself to engineers, not judges. The providing of just compensation to property owners falls within the purview of the laws of eminent domain.

6) *Discretion of District Judge*

 The District Judge, in weighing the equities of this case, could well have reached the same conclusion as did another Court in a somewhat analogous situation in Road Review League, Town of Bedford v. Boyd, supra:

"To enjoin defendants at this stage from carrying out the commitment of the federal government to provide 90 per cent of the necessary funds for this project would create a chaotic situation. Plaintiffs argue that the damage to the State could be mitigated, that the rights of way which the State has acquired could be sold or returned to their former owners, that the course of the road could be changed without undue hardship. These arguments do not seem to me to be realistic. Some loss, as for example, engineering expenses, would obviously be irretrievable. In all likelihood, the ultimate loss would amount to much more. Substantial delay, perhaps amounting to over two years, would be encountered before a new route could be surveyed and engineered." 270 F.Supp. at 664.

Under the standards of judicial review in this type of action we conclude that, despite the showing of heavy damage to the North Nashville area, we have no choice except to affirm the judgment of the District Court in refusing to grant a preliminary injunction.

7) *Possible administrative relief yet available*

 In his memorandum denying the application for temporary injunction, the District Judge found that "[p]laintiffs have shown that the proposed route will have an adverse effect on the business life and educational institutions of the North Nashville community. The proof shows that the consideration given to the total impact of the link of I–40 on the North Nashville community was inadequate." He pointed out that the business section of Jefferson Street will be "grave-

ly affected." This Court agrees with these conclusions. For example, it is shown that the blocking of other streets will result in a heavy increase in traffic through the campus of Fisk University and on the street between this university and Meharry Medical College. A public park used predominantly by Negroes will be destroyed. Many business establishments owned by Negroes will have to be relocated or closed.

It is to be regretted that appellant's request for a ninety day delay in receiving bids, made shortly before this suit was filed, was denied by both the State Commissioner of Highways and the United States Department of Transportation. If this delay had been granted, perhaps enough problems could have been resolved by engineering and negotiation so that this litigation would never have been initiated. It also is to be regretted that appellants waited so late to begin their efforts to correct the grave consequences which will result from the construction of this highway.

From statements made during oral argument, however, it appears that there yet may be hope that some of the severe damage to the Negro community and institutions can be reduced if not relieved in their entirety. It was stated that the United States Department of Transportation recently conducted a meeting in Nashville with respect to this project and announced that the letting of the contract will not be approved pending further study.

The brief of appellees contains a statement to the effect that under State law contracts are required to be let within ten days after receipt of bids. More than ten days already have elapsed since the bids for this highway project were received.[2] The brief also says that "the record shows that several access ways are already provided and that others can be had if necessary." This, too, is a problem to be solved by engineers and not by judges.

If, as stated in oral argument, the United States Department of Transportation has announced that it will not approve the letting of the contract for this project pending further study, it would appear that final approval of this segment of highway may not yet have been given by that Department. We cannot presume that the Department of Transportation will fail to give consideration to possible revisions in the plans and specifications so as to alleviate as much as feasible the grave consequences which this record shows will be imposed under the present plans upon the North Nashville community.

Another question presented on appeal is whether the District Judge erred in dismissing the case as to defendant Beverly Briley, Metropolitan Mayor of Nashville and Davidson County. The District Court concluded that the Mayor has no jurisdiction over the locating of an interstate highway and could not participate in any decision with respect thereto.

We reverse the order of the District Court dismissing the Metropolitan Mayor as a party defendant to this litigation. Although the District Court is correct in its conclusion that the Mayor has no legal power to decide the location of an interstate highway, it cannot be doubted that he possesses considerable powers of persuasion and cooperation. We cannot predict the ultimate disposition of this case in the District Court on its merits. It is conceivable that the final solution could require the closing, opening, or rerouting of city streets, rezoning or other municipal action. A correction of these problems could require cooperation among Federal, State and local governments. We consider it proper to retain a representative of the Metropolitan Government as a party defendant.

The stay order heretofore entered by this Court will continue in effect for twenty days from the date of the filing of this opinion in order to maintain the

---

2. During oral argument it was stated that the low bidder on this project has waived this requirement for 60 days.

status quo during the period prescribed by Rule 24 of the rules of this Court.

Reversed as to the order dismissing the Mayor of the Metropolitan Government of Nashville and Davidson County as a party defendant. Otherwise affirmed and remanded to the District Court for further proceedings.