432 F.2d 1307
 1 ERC 1685, 1 Envtl. L. Rep. 20,053
 CITIZENS TO PRESERVE OVERTON PARK, INC., William W. Deupree,
Sr., Sunshine K. Snyder, Sierra Club, and National
Audubon Society, Inc., Plaintiffs-Appellants,
v.
John A. VOLPE, Secretary Department of Transportation, and
Charles W. Speight, Commissioner Tennessee
Department of Highways, Defendants-Appellees.
 Nos. 20344, 20345.
 United States Court of Appeals, Sixth Circuit.
 Sept. 29, 1970, Rehearing Denied Oct. 30, 1970, Certiorari
Granted Dec. 7,1970, See 91 S.Ct. 246.
 
 Charles F. Newman, Memphis, Tenn., for appellants; John W. Vardaman, Jr., Norman Sinel, Wilmer, Cutler & Pickering, Washington, D.C., Charles Forrest Newman, Burch, Porter & Johnson, Memphis, Tenn., on brief.
 Thomas F. Turley, Jr., and J. A. Hanover, Memphis, Tenn., for appellees; Thomas F. Turley, Jr., U.S. Atty., David M. Pack, Atty. Gen. of Tenn., Lutron C. Goodpasture, Asst. Atty. Gen., of Tenn., Nashville, Tenn., J. Alan Hanover, Sp. Counsel, Hanover, Walsh, Barnes & Jalenak, Memphis, Tenn., on briefs.
 Before WEICK, CELEBREZZE and PECK, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 The present action was brought by plaintiffs, Citizens to Preserve Overton Park (a corporation organized for the purpose its name implies), William W. Deupree, Sr. (a taxpayer), Sunshine K. Snyder (a taxpayer and owner of property affected by the proposed highway route), the Sierra Club (a nonprofit corporation organized for conservation of natural resources), and the Audubon Society, Inc. (also a conservation organization). The defendants are John A. Volpe, Secretary of Transportation, and Charles W. Speight, Commissioner of the Tennessee Department of Highways.[1]
 
 
 2
 The plaintiffs, claiming that Secretary Volpe had not complied with statutory mandates before releasing federal funds for an interstate highway and that administrative procedures had not been substantially followed, sought injunctive relief against Secretary Volpe prohibiting him from releasing federal funds (which represent 90% Of the total cost) for the construction of a section of Interstate 40 through Overton Park, a public park in Memphis, Tennessee, and also enjoining Commissioner Speight from proceeding further on the proposed segment of the highway through Overton Park.[2]
 
 
 3
 The District Court granted defendants' motion for summary judgment. 309 F.Supp. 1189 (W.D.Tenn.1970). The plaintiffs appealed. We affirm.
 
 
 4
 Overton Park is a 342 acre, municipally owned park in midtown Memphis used for a zoo, a 9-hole golf course and other recreational purposes. The proposed section of the interstate highway extends in an east and west direction through the Park over the presently existing paved, non-access highway used by diesel buses which is approximately 4,800 feet in length. The existing highway is 40 to 50 feet wide. The proposed interstate will consist of six lanes-- three running in each direction, separated by a median strip approximately 40 feet wide. The interstate right-of-way will vary from approximately 250 feet in width to approximately 450 feet in width, and will require the use of approximately 26 acres of the Park. The proposed design requires that a large portion of the highway be depressed sufficiently to remove traffic from the sight of users of the Park, however, five or six feet of fill will be required where a creek runs across the right-of-way. A 1200 foot access ramp will be located within the eastern end of the park.
 
 
 5
 Because this case is on appeal from a summary judgment, the only question is whether there remains a genuine issue over any material fact in dispute. Appellants argue that there are several material facts which are genuinely disputed. They contend that it is disputed whether the Secretary made the determinations required by law before authorizing the release of federal funds.[3] Appellants also argue that administrative procedures were not followed because of failure to include in the notice of a public hearing any provision for the submission of written statements.
 
 
 6
 When considering a motion for summary judgment a court is required to 'construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.' Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962). If, after having done that, the court is able to say there is no genuine issue as to any material fact, summary judgment is appropriate.
 
 
 7
 Although a court must be hesitant to grant summary judgment, cases challenging administrative action are ripe for summary judgment. See, e.g., Todaro v. Pederson, 205 F.Supp. 612, 613 (N.D.Ohio 1961), aff'd 305 F.2d 377 (6th Cir.), cert. denied 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962). Unlike civil actions originating in the District Court, litigants challenging administrative action are not entitled to a de novo hearing. See e.g., Dredge Corp. v. Penny, 338 F.2d 456, 462 (9th Cir. 1964). Rather, in such cases the court must determine whether the administrator's decision was arbitrary and capricious. 5 U.S.C. 706(2)(A).[4]
 
 
 8
 In addition to the narrow scope of review of administrative action, plaintiffs are faced with the additional burden of overcoming a presumption of regularity afforded the acts of an administrator. See Goldberg v. Truck Drivers Local Union No. 299, 293 F.2d 807, 812 (6th Cir.), cert. denied 368 U.S. 938, 82 S.Ct. 379, 7 L.Ed.2d 337 (1961); Nolan v. Rhodes,251 F.Supp. 584, 587 (S.D.Ohio 1965), aff'd 383 U.S. 104, 86 S.Ct. 716, 15 L.Ed.2d 616 (1966). The presumption of regularity is a particularly strong one. See, e.g., Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453, 460 (1967). This, of course, does not relieve the party moving for summary judgment from the burden of showing that there remains no dispute concerning any material facts It does, however, affect the type of evidence required to carry his burden. It also makes clear that a party opposing summary judgment must do more than merely assert that the administrator's actions were unlawful. He must be able to show by affidavit, or other evidence, that there is at least a possibility that he will be able to overcome the presumption of regularity. 379 F.2d at 462.
 
 
 9
 In this case, the threshold question is whether the Secretary made the proper determinations at all, let alone whether those determinations were arbitrary and capricious.
 
 
 10
 Congress has declared it a national policy to preserve parklands and has forbidden the Secretary to approve a project which affects a park unless he first determines '(1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park * * * result from such use.' 49 U.S.C. 1653(f).[5]
 
 
 11
 Appellants urge that there is no evidence that the Secretary ever made the necessary two findings before authorizing the release of funds.
 
 
 12
 There is no requirement in the statute that the Secretary articulate his findings. Nor are we free to impose such a requirement on him. See Braniff Airways, Inc. v. C.A.B., supra at 460.
 
 
 13
 We are of the opinion that the moving party introduced competent evidence tending to prove that the necessary determinations were made by the Secretary.
 
 
 14
 An affidavit was submitted on behalf of the Secretary by Edgar H. Swick. Swick was Deputy Director of Public Roads[6] and therefore could give competent evidence from his personal knowledge concerning the necessary determinations.[7] Mr. Swick attested that the original decision with respect to the route was made in 1956 by the Bureau of Public Roads. Although the relevant statutes dealing with parklands were not in force in 1956 and, therefore, it is unlikely that the Bureau had specifically in mind the necessary requirements, subsequent determinations were made reaffirming the original decision to route along the bus highway. Mr. Swick attested:
 
 
 15
 'The location of I-40 along the bus route through Overton park was approved by the Bureau of Public Roads in 1956. All alternate alignments were rejected because of large displacements of persons, hospitals, schools, churches, and commercial establishments. For instance, the route immediately north of the park would have involved the taking of three schools, including Southwestern University and the largest high school in Memphis, plus churches attended by 4,000 people, industries, and the residences of more than 1,500 people. The route south of the park would have involved taking two schools, three churches attended by 7,500 people, 46 commercial establishments, residential units being occupied by over 3,000 persons and a hospital and home for the aged. Incidentally, the construction and right-of-way costs of the least expensive of these alternate routes would exceed the costs of the chosen route by many millions of dollars.
 
 
 16
 'The 1956 determination that the only feasible and prudent location for the highway was on the present bus route through the park was reaffirmed by Federal Highway Administrator Whitton in 1966, (Exhibit A), Federal Highway Administrator Bridwell and Secretary of Transportation Boyd in 1968, (Exhibit B), and Federal Highway Administrator Turner and Secretary of Transportation Volpe in 1969, (Exhibit C) * * *.'
 
 
 17
 The exhibits referred to consist of press releases and correspondence between various officials of the state and federal governments. Appellants challenge the admissibility of these documents. These documents were admissible to show what was considered by the Secretary when he made his determinations. Mr. Swick's assertions that the necessary determinations were made and the reasons therefor are unchallenged by any evidence, and there is nothing to indicate that his statements could be disputed at a trial. With respect to the routing of the road, it is clear that the Secretary made the determinations required by law.
 
 
 18
 In addition to the valid reasons for choosing the route listed in the affidavit, Mr. Swick went on to point out that as of 1967, prior to the time Secretary Volpe took office, all of the right-of-way leading up to either side of the Park had been acquired and substantial work had been done. The right-of-way through the Park had also been acquired by the state from the City of Memphis, though no work on it has yet been done.[8] As of the time of this case, the interstate route had been excavated up to either end of the park with the resulting disruption of homes and businesses that necessarily result whenever a major highway is routed through a city. See Nashville I-40 Steering Committee v. Ellington, 387 F.2d 179, 185 (6th Cir. 1967), cert. denied 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed.2d 982 (1968). If it were not determined that a new route be chosen (the only suggested alternatives[9] include businesses and residences) not only would there be additional disruption, but that already caused would have been futile and wasteful. Even assuming that the Secretary was not aware of this condition, the court could not ignore the social and economic impact of changing the route at this late date. See Road Review League, Town of Bedford v. Boyd, 270 F.Supp. 650, 664 (S.D.N.Y.1967).[10]
 
 
 19
 Appellants argue that they have introduced evidence which tends to dispute the fact that the Secretary ever made a determination that there were no feasible and prudent alternatives. Specifically they submitted as an exhibit, the testimony of Lowell K. Bridwell, the former Federal Highway Administrator who approved the route in 1968, to a Congressional committee with respect to his approval.
 
 
 20
 'We went to the city council of Memphis and we said, 'Yes, there are alternatives. We won't even give you any information on what the alternatives cost in dollars because we don't want that to be a factor in your recommendation of which line to choose. Rather, we would like you to focus upon the conflicting set of community values that are inherent in this kind of a situation."
 
 
 21
 Appellants contend that the Secretary merely delegated his duty to the Memphis City Council by allowing it to choose the route.
 
 
 22
 In our opinion, the testimony of Mr. Bridwell is further evidence that the Secretary complied with the statute. The legislative history of the statute makes it clear that local preferences are to be considered:
 
 
 23
 This amendment of both relevant sections of law is intended to make it unmistakably clear that neither section constitutes a mandatory prohibition against the use of the enumerated lands, but rather, is a discretionary authority which must be used with both wisdom and reason. The Congress does not believe, for example, that substantial numbers of people should be required to move in order to preserve these lands, or that clearly enunciated local preferences should be overruled on the basis of this authority. 1968 U.S.Code Cong. & Adm. News at p. 3538.
 
 
 24
 Appellants contend that the Secretary did not determine that the approved plan included 'all possible planning to minimize harm' to the Park. Appellants argue that there are at least three designs which are possible and which would minimize harm to the Park: a bored tunnel, a cut and cover tunnel or a highway depressed below the ground level.
 
 
 25
 The affidavit of Mr. Swick mentions all of these possibilities and the reasons for rejecting them. It is unnecessary to go into elaborate detail. However, it is basically undisputed that instead of the estimated $3.5 million cost of the present design, a cut and cover tunnel would cost approximately $41.5 million and a bored tunnel over $100 million. While not controlling on whether these designs are possible, cost is certainly a legitimate consideration. Mr. Swick's affidavit also attests that not only would there be a huge price differential, but the benefits to be gained would be minimal. The Park's vegetation would not be preserved; there would be air pollution problems at the tunnel vents; there would be additional traffic hazards; and there would be serious drainage problems caused by depressing the road beneath the level of a creek that runs across the proposed right-of-way.
 
 
 26
 The affidavit makes it clear that the Secretary was fully aware of the alternative designs and chose the one now in effect. Other than appellants' bald assertion that the Secretary did not make such a finding, the evidence points to the fact that the Secretary did determine that the proposed design included 'all possible planning to minimize harm' to the Park. By introducing affidavits tending to show alternative designs, appellants really raise the issue of whether there is a genuine dispute that the Secretary's determination was arbitrary and capricious. Whether the Secretary's determination that the proposed plan included 'all possible planning to minimize harm' to the Park depends on an interpretation of the word 'possible.' It would be unrealistic to say the Secretary must approve any possible plan no matter what the cost and engineering problems compared to whatever minimal gains. 'Possible' must be interpreted within the bounds of wisdom and reasonableness.
 
 
 27
 The District Court was correct that it cannot hear de novo the determination of the Secretary. In another case involving a section of this same interstate highway, this Court has cited Berman v. Parker, 348 U.S. 26, 35, 75 S.Ct. 98, 104, 99 L.Ed. 27 (1954), where the Supreme Court held: 'It is not for the courts to oversee the boundary line nor sit in review on the size of a particular project area.' Nashville I-40 Steering Committee v. Ellington, supra, 387 F.2d at 185. This holding applies with equal force to the design for the highway. The pleadings, affidavits and exhibits in this case make it clear that there is no factual dispute about what design was chosen and what the alternatives were. The only issue is the wisdom of the choice. Under these facts, the District Court, in our opinion, was justified in holding that the necessary determinations required by the statutes were made in good faith by the Secretary and that such determinations were not arbitrary or capricious. A trial on the issues would be an exercise in futility.[11]
 
 
 28
 Appellants contend that there was not substantial compliance with the requirements for a public hearing. 23 U.S.C. 128 requires a state submitting plans for a federal-aid highway to conduct a public hearing and to forward a transcript of the hearing to the Secretary along with a certification by the state highway department that it 'has considered the economic and social effects of such a location (of a road through a city), its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community.' Relative to the notice for such hearing, the Department of Transportation issued Policy and Procedure Memorandum 20-8, 23 C.F.R., Chap. I, part. 1, 8, which provides in relevant part:
 
 
 29
 '(2) Provision shall be made for submission of written statements and other exhibits in place of, or in addition to, oral statements at a public hearing. The procedure for such submission shall be described in the notice of public hearing and at the public hearing * * *.'
 
 
 30
 It is undisputed fact that the Tennessee Highway Department gave notice of a public hearing to be held on May 19, 1969, but that the notice failed to contain any provision for the submission of written statements. It is also undisputed that written statements were submitted.[12] Appellants are unable to cite a single instance in which an interested party was deprived of an opportunity to be heard, nor are they able to indicate any additional information that was not submitted at the hearing as a result of the deficiency in the notice. In dealing with errors committed by administrative agencies we are required to take due account of the rule of prejudicial error. 5 U.S.C. 706; see, e.g., Braniff Airways, Inc. v. C.A.B., supra, 379 F.2d at 465-466. We are in accord with the District Court that the failure to include a method by which to submit written statements was, on the facts of this case, harmless error.
 
 
 31
 We do not read D.C. Federation of Civic Associations, Inc. v. Volpe, 434 F.2d 436 (D.C.Cir. 1970) to dictate a different result. In that case no hearing at all had been provided for, while in the present case there was a very adequate hearing.
 
 
 32
 Other issues have been raised which we considered but do not deem them as meriting discussion.
 
 
 33
 The injunction pending appeal is dissolved and the judgment of the District Court is affirmed.
 
 
 34
 CELEBREZZE, Circuit Judge (dissenting).
 
 
 35
 For two principal reasons, I respectfully dissent from the majority's affirmance of the district court's grant of summary judgment in this case.[1]
 
 
 36
 First, this case is inappropriate for summary judgment. 'Summary judgment should be granted only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is and no genuine issue of fact remains for trial.' Rogers v. Peabody Coal Company, 342 F.2d 749, 751 (6th Cir. 1965). 'In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.' Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962). Even though the facts may be undisputed, if there is a dispute over the inferences to be drawn from the facts, summary judgment is not proper. Knapp v. Kinsey, 249 F.2d 797 (6th Cir. 1957). See generally, 6 Moore, Federal Practice 2281-86 (2d ed. 1966).
 
 
 37
 The two most critical issues of fact in this case are in vigorous dispute: (a) whether the Secretary made the determinations required of him by statute (i.e., 'no feasible and prudent alternative,' and 'all possible planning to minimize harm'); (b) whether, assuming the Secretary made those determinations, they were supported by sufficient evidence (either 'substantial evidence' or, as the majority prefers, 'arbitrary and capricious') on the record as a whole.[2] Indeed, the only facts over which there is no dispute are that the Secretary approved an appropriation for a highway through Overton Park, which is a 'park' within the meaning of section 138.
 
 
 38
 (a) As the majority points out, Mr. Swick attested that in 1956 (which was, incidentally, 12 years prior to the creation of the Department of Transportation and the enactment of section 138 as it currently stands) some federal official determined that Overton Park was 'the only feasible and prudent location for the highway,' and that this determination was subsequently reaffirmed by Secretaries of Transportation. However, Swick's undocumented affidavit is disputed by evidence from at least two other individuals. Mr. Arlo I. Smith, an officer of the Citizens to Preserve Overton Park, swears that the Secretary made no such finding. Swick's assertion is further disputed by the transcript of testimony of Mr. Lowell K. Bridwell, a former Federal Highway Administrator, before a congressional committee. Before the committee, Mr. Bridwell swore, among other things, that the decision to build the highway through the park was left 'completely in the hands of the city council' of Memphis. As the principles and authorities cited above indicate, on a motion for summary judgment the district court and this court are required to 'construe the evidence in its most favorable light in favor of the party opposing the motion.' By no means, on a motion for summary judgment, may a court credit the affidavits of the movant over those of the party opposing the motion, unless the latter are patently false, forged, or perjured. In crediting the affidavit of Mr. Swick over the opposing documents and affidavits that were tendered on this motion for summary judgment, the district court, in my opinion, committed reversible error.
 
 
 39
 (b) Every explanation given by Mr. Swick of the reasons why other routes were neither feasible nor prudent, and why no other plan would include all possible planning to minimize harm to the park, is rebutted by affidavits and other public statements of private citizens, independent experts, and other federal and local agencies. Without attempting to review all the evidence the district court had before it on this issue, I will cite just one example. Letters from officials of the Department of the Interior, with whom the Secretary of Transportation was statute bound to consult, indicate that 'once the park has been separated by the expressway its values have been seriously impaired,' and, regarding the tunneling issue, 'regardless of what type of surface design is followed there won't be much left in the way of a wooded park left in Overton Park after an interstate Highway is routed through it.' There is a litany of other competent evidence that the route chosen was neither the only feasible nor prudent alternative, but that the method selected did not include all possible planning to minimize harm. This other evidence, which the majority did not even mention, should have been construed most strongly in favor of the Appellants. Again applying the 'presumption of regularity' liberally and with unorthodox zeal, the district court and the majority of this panel credited only the affidavit presented by the movant. In doing so, I believe each committed error. A genuine issue of material fact exists as to whether, assuming the Secretary made any determination at all, his determinations that the route selected was the only 'feasible and prudent alternative to the use of' parkland, and that the method selected included 'all possible planning to minimize harm' were supported by substantial evidence on the record that we have before us (or, as the majority prefers, arbitrary and capricious).
 
 
 40
 I would remand this case to the district court for an evidentiary hearing on issues (a) and (b).
 
 
 41
 I now turn to my second ground for dissent. The Secretary acted on a hotly disputed record and could reasonably have foreseen that his actions would eventually have to be reviewed. Yet, he rendered no findings of fact and conclusions under section 138 or otherwise. Surely, if a statute requires an administrator to make absolute determinations[3] that are subject to review, those findings must appear in the record, and they must be sufficiently clear and complete so that the reviewing court can determine whether they are supported by sufficient evidence. Cf. Medical Committee for Human Rights v. Securities and Exchange Commission, 432 F.2d 659 (D.C.Cir., 1970). How a reviewing court can determine whether the Secretary's findings were supported by sufficient evidence, when the Secretary has published no findings, is a source of great puzzlement for me.
 
 
 42
 In conclusion, public parklands are the only remaining weekend sanctuaries for vast numbers of city dwellers from the polluted urban sprawl. A threat to a neighborhood parkland is a threat to the health, happiness, and peace of mind of all the neighborhood people. Congress recognized this fact. The Highway Act therefore requires that the public, and their experts, be consulted, and that their testimony be weighed in the manner of courtroom evidence by the federal officials responsible for funding highway projects. The Secretary has not fulfilled his duty under Title 23 simply by seeing that the requisite hearings are conducted and the necessary advice solicited. He must weigh all the evidence carefully and deliberately, and his decision must be reviewed with great scrutiny. It cannot be if it is not accompanied by findings of facts and conclusions. At the very least, procedural due process means that the people of this country be listened to, and heard, on matters affecting their daily lives as directly as the environment in which they live. Obviously, the federal courts do not have the technical expertise of roadbuilders, and they should never interfere in the technical processes of building boads. It is our solemn responsibility, however, to insure that those with technical expertise exercise it in accordance with the laws of the United States and the public welfare.
 
 
 43
 I would remand this cause to the district court with the suggestion that it treat the action as a mandamus proceeding, pursuant to the mandamus jurisdiction given it by 28 U.S.C. 1361 (1964). I would further instruct the district court to direct the Secretary of Transportation to render findings of fact from which a reviewing court could determine whether he properly discharged his statutory responsibility. I would continue the stay this Court initially put into effect until the above course of action is completed and the Appellants have had an opportunity, if they desire, for full and effective judicial review. See Medical Committee for Human Rights v. Securities and Exchange Commission, supra, 432 F.2d 659, D.C.Cir., Schatten v. United States, 419 F.2d 187 (6th Cir. 1969).
 
 ON PETITION FOR REHEARING
 
 44
 PER CURIAM.
 
 
 45
 Appellants have filed a petition for rehearing with a suggestion that it be heard in banc. A vote of the Circuit Judges in regular active service was taken at the request of Judge Celebrezze, but only he and Judge McCree voted in favor of an in banc hearing, and it was not ordered. The petition for rehearing is therefore properly before the panel for disposition.
 
 
 46
 On page 2 of the petition for rehearing is contained the following statement:
 
 
 47
 '1. On page 7 of the majority opinion, Judge Weick states:
 
 
 48
 'Mr. Swick's assertions that the necessary determinations were made and the reasons therefore are unchallenged by any evidence, and there is nothing to indicate that his statements could be disputed at a trial.' The statement disregards the following competent evidence produced by appellants:
 
 
 49
 '(a) Challenging Mr. Swick's assertions that Secretary Volpe determined that there were no feasible and prudent alternatives, Arlo I. Smith, who has followed this controversy closely, has researched the activities of the Department of Transportation and was in frequent communication with officials of that Department, stated in paragraph 28 of his affidavit (App. No. 3) that: '* * * defendant Volpe has made no finding that there is no feasible and prudent alternative to the use of such public park and recreation areas."
 
 
 50
 The above-quoted portion of the affidavit of Arlo I. Smith is certainly positive, but the trouble is that the ellipsis therein indicates that something was omitted therefrom. An examination of Smith's affidavit in the record, for the purpose of ascertaining the omission, reveals that the portion omitted reads as follows: 'On information and belief.' (App. No. 3 para. 28).
 
 
 51
 Thus by restoring the omitted words to the quoted portion of Smith's affidavit, it is clear that his statement was based, not on personal knowledge, but only on information and belief. The affidavit therefore did not contain competent evidence to be considered in opposing a motion for summary judgment. It could not contradict the positive statement of facts contained in Mr. Swick's affidavit. Rule 56(e) Fed.R.Civ.P.; Schoenbaum v. Firstbrook, 405 F.2d 200, 209 (2d Cir. 1969); cf. Bsharah v. Eltra Corp., 394 F.2d 502 (6th Cir. 1968).
 
 
 52
 In our opinion the District Court did not abuse its discretion in denying discovery for the purpose of probing the mental processes of the Secretary. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Sears, Roebuck & Co. v. N.L.R.B., 433 F.2d 210 (6th Cir. 1970); Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453, 462 (1967).
 
 
 53
 Appellants rely on the case of D.C. Fed'n of Civic Ass'ns, Inc. v. Volpe, (D.D.C.1970) 316 F.Supp. 754, which involved the Three Rivers Bridge project and alleged political pressures not present here. In that case the District Court narrowly restricted the decision of the Supreme Court in Morgan and permitted interrogation of Secretary Volpe, which did indeed probe his mental processes. Until such time, however, as the Supreme Court restricts its opinion in Morgan, which we believe is unambiguous, we will follow it. The District Court in D.C. Fed'n of Civic Ass'ns, supra, did seem to agree with Chief Judge Brown, stating: 'As discussed above, there is no requirement that the Secretary publicly articulate his 138 determination.' In that case the Court merely required the Secretary to make 'at least a mental finding.' Id. n. 30. Secretary Volpe testified that he did make the determinations required by Section 138 and the District Court credited his testimony; id. at 771.
 
 
 54
 Mr. Swick's affidavit relates what Secretary Volpe did to minimize harm. It states:
 
 
 55
 'Further, the Secretary of Transportation, in approving this project has particularly required that maximum planning be done to minimize harm to the park. (Exhibit C). The features of this plan include, among others: -- Depression of the roadway to the maximum extent possible consistent with the requirements of drainage and possible safety in the area. -- A pedestrian crossing over the highway in the area of the zoo with a lower crown and a broad, natural looking aspect that blends with the surroundings and provide for a visual continuity. -- Exploration of other pedestrian crossings. -- Continual study of beautifying the parkway to conform with landscaping to architectural renderings reviewed by the Secretary of Transportation.
 
 
 56
 'The State has agreed to this planning to minimize harm to the park.
 
 
 57
 'With the exception of a seven-mile gap in I-40 in downtown Memphis, including Overton Park, this Interstate highway is open to traffic or nearing completion between Nashville, Tennessee, and Little Rock, Arkansas.'
 
 
 58
 Conclusory statements in Smith's affidavit are unacceptable. Bsharah v. Eltra Corp., supra.
 
 
 59
 No competent evidence was presented to the District Court or to this Court to impeach the affidavit of Mr. Swick.
 
 
 60
 Appellants have attached to their petition for rehearing Exhibit 'A', which purports to be a photocopy of letter dated August 21, 1970, from the Department of Highways of the State of Tennessee, to Mr. Frank Jordan, Chairman of Mid-Memphis Improvement Association. Since this letter was not in evidence, it is not properly before us and it is ordered stricken from the petition for rehearing.
 
 
 61
 The petition for rehearing is denied. The application for a stay is denied. Judge Celebrezze dissents.
 
 
 
 [1]
 The action was originally filed in the United States District Court for the District of Columbia solely against Secretary Volpe. Before the motion for preliminary injunction and the motion to dismiss were decided, the action was transferred to the United States District Court for the Western District of Tennessee where Commissioner Speight was made a defendant
 
 
 [2]
 While there may be some question whether the District Court had jurisdiction to enjoin Commissioner Speight, in view of our disposition of the case, it is unnecessary to decide that issue. There are cases indicating that there is jurisdiction. Nashville I-40 Steering Committee v. Ellington, 387 F.2d 179 (6th Cir. 1967), cert. denied 390 U.S. 921, 88 S.Ct. 857, 19 L.Ed.2d 982 (1968); Road Review League, Town of Bedford v. Boyd, 270 F.Supp. 650, 663-664 (S.D.N.Y.1967). It may well be doubted, however, whether the District Court could properly enjoin Commissioner Speight if the state desired to use its own funds to construct the highway on its own property
 
 
 [3]
 Release of the funds was enjoined by order of this Court pending disposition of the appeal
 
 
 [4]
 The Administrative Procedure Act is made applicable to actions of the Department of Transportation by 49 U.S.C. 1655(h)
 
 
 [5]
 The text of 49 U.S.C. 1653(f) in full is as follows:
 It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges and historic sites. The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After August 23, 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State or local significance as determined by the Federal, State, or local officials having jurisdicdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.
 This same provision is contained in 23 U.S.C. 138.
 
 
 [6]
 The Bureau of Public Roads, originally a part of the Department of Commerce, was transferred to the Department of Transportation in 1967. 49 U.S.C. 1655
 
 
 [7]
 The Secretary is authorized to act through delegates. 49 U.S.C. 1657(e) (1)
 
 
 [8]
 The state paid the City $2,000,000 and acquired the legal title to the strip of land consisting of 26 acres by deed. The state paid the City an additional $209,000 to construct additional parking areas, to move a wooden pavilion, and to relocate various utilities. The City was required by ordinance to replace any parklands taken with additional parks. The City has spent $1,000,000 of these funds for a 160 acre golf course; $209,000 will be spent on the zoo, and the balance of $1,000,000 is required to be expended for other parklands
 
 
 [9]
 The fact that alternative routes can and have been suggested goes to the issue of the reasonableness of the Secretary's decision. We have indicated in the text that alternatives would now be unreasonable on the facts of this case. A discussion of reasonableness as a disputed fact is included infra
 
 
 [10]
 The legislative history of the statute is revealing:
 The committee would further emphasize that while the areas sought to be protected by section (4)(f) of the Department of Transportation Act and section 138 of title 23 are important, there are other high priority items which must also be weighed in the balance. The committee is extremely concerned that the highway program be carried out in such a manner as to reduce in all instances the harsh impact on people which results from the dislocation and displacement by reason of highway construction. Therefore, the use of park lands properly protected and with damage minimized by the most sophisticated construction techniques is to be preferred to the movement of large numbers of people. 1968 U.S.Code Cong. & Adm. News at p. 3500.
 
 
 [11]
 The case of Medical Committee for Human Rights v. Securities and Exchange Commission, 432 F.2d 659 (D.C.Cir.1970), relied on in the dissent, involved the question whether a decision of the Commission relating to proxy material was actually subject to judicial review. It does not support the thesis of the dissent that the Secretary of the Department of Transportation, whenever he approves the location, design and construction of a highway must adopt findings of fact and conclusions of law. These matters, in our judgment, involve the exercise of discretion and are reviewable only when they are 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.' 5 U.S.C. 706(2)(A)
 Nor do we believe that the District Court abused its discretion by not permitting discovery for the purpose of probing the mental processes of the Secretary in arriving at his decision. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453, 462 (1967).
 
 
 [12]
 Written statements were specifically requested and received from witnesses whose testimony was not recorded because of a failure of the recording device. The 1969 hearing was on the design. About 40 statements were filed after the hearing. A corridor hearing was held in 1961. Both hearings were well attended. Both corridor and design were approved by federal, state and city authorities
 
 
 [1]
 In addition to my two principal grounds for dissent, I have grave reservations about the majority's apparent holding that Section 10 of the Administrative Procedure Act, 5 U.S.C. 706 (1966), and the due process clause of the Fifth Amendment require no higher scope of review of the Secretary of Transportation's actions, under 23 U.S.C. 138 (Supp. IV 1965-1968), than 'arbitrary and capricious.'
 Congress has declared it to be
 'the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites.' 23 U.S.C. 138.
 Title 23 requires that the communities affected by massive federally-funded highway projects be consulted at each stage of their planning and development. 23 U.S.C. 128 (Supp. IV 1965-1968). In accordance with Congress's declaration of 'national policy,' the Secretary of Transportation is charged with the responsibility of reviewing the records of the public hearings held in the affected communities, and is required to consult ('shall consult and cooperate with') the Secretaries of the Interior Housing and Urban Development, and Agriculture.
 Under section 138, the Secretary is absolutely forbidden ('shall not approve') from approving 'any' appropriation for a highway through a public parkland
 'unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park * * * resulting from such use.' 23 U.S.C. 138
 It is important to note that the statute does not provide, as the majority implies that it does, 'unless he first determines '(1) there is * * *. " The statute provides 'unless (1) there is * * *' The words 'he first determines' are those of the majority, not of Congress.
 The provisions of Title 23 provide the only avenue for direct citizen participation in decisions concerning the planning and construction of massive federal highway projects, decisions that may well have greater direct impact on the lives of citizens and the physical environment in which they live than any other governmental action. See D.C. Federation of Civic Associations, Inc. v. Volpe, F.2d (D.C.Cir., 1970).
 'The Supreme Court has made it clear in a series of cases that the right of effective participation in the political process 'is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.' These rights, according to the Court, are 'individual and personal,' they touch a 'sensitive and important area of human rights,' and they involve the 'basic civil and political rights' of citizens.' Id. at .
 By perfunctorily approving a highway appropriation under section 138, the Secretary of Transportation can nullify the important procedural guarantees of Title 23, as well as render illusory the 'national policy' declared by Congress. When such terrific power over environmental affairs is placed in the hands of an administrative official with minor expertise in the natural sciences, the courts must scrupulously oversee his judgment, in order to guarantee to the people of the affected communities that their words, and the words of their experts, have not merely been recorded and transcribed, but rather weighed and scrutinized in the manner of courtroom evidence.
 Yet, the majority holds that the Secretary's determinations will be upheld unless 'arbitrary and capricious.' This holding is based I believe, not only upon their incorrect reading of section 138 (i.e., 'he first determines * * *'), but also upon a misreading of the Administrative Procedure Act. On my reading of section 10 of that Act, where an agency hearing is required by statute, an administrative decision made upon the basis of that hearing must be supported by substantial evidence. 5 U.S.C. 706(2)(E) (1966). To digress somewhat, the Act further requires that, regardless of the scope of review, i.e., substantial evidence or arbitrary and capricious, the 'court shall review the whole record or those parts of it cited by a party.' The district court in this case, however, effectively precluded a review of the record on which the Secretary based his determination assuming the Secretary did make one, by denying the Appellants access to it in discovery. How either the district court or a majority of this panel could determine whether the Secretary's determinations were arbitrary and capricious on the record as a whole, without having the record on which the Secretary based his decision, is enigmatic to me.
 In any event, notwithstanding the Administrative Procedure Act, I do not believe that due process contemplates a lesser evidentiary showing when a neighborhood park is treatened by the construction of a freeway, and the health, safety, and peace of mind of a community is imperiled, than the National Labor Retions Board needs to enforce a cease and desist order against one employer who might inadvertently discriminate against one employee, or than a municipal traffic court requires to fine one parking violator.
 
 
 [2]
 As was noted above, n. 1 at p. 1315, the district court denied the Appellants access to the record on which Secretary Volpe was supposed to have made his decision, by denying their motions to depose government officials. This makes a determination of whether the Secretary's judgment was supported by sufficient evidence 'on the whole record' impossible, and on a motion for summary judgment, is reversible error. See generally, 6 Moore, Federal Practice 2397 (2d ed. 1966)
 
 
 [3]
 Section 138 is not a statute granting broad discretionary authority. Under the statute, the Secretary 'shall not' make 'any' appropriation 'unless (1) there is * * *.' This statute requires the Secretary's findings to be, within a fine range of reasonable human tolerances, absolute. It leaves no room for 'discretion.'