**CITIZENS TO PRESERVE OVERTON PARK, INC., et al., Original Plaintiffs,
and
Sierra Club et al., Intervening Plaintiffs,
v.
John A. VOLPE, Secretary, Department of Transportation, and Charles W. Speight, Commissioner, Tennessee Department of Highways, Original Defendants,
and
City of Memphis et al., Intervening Defendants.**

**Civ. No. C-70-17.**

United States District Court,
W. D. Tennessee, W. D.

April 19, 1973.

John W. Vardaman, Jr., Williams, Connolly & Califano, Washington, D. C., Charles F. Newman, Burch, Porter & Johnson, Memphis, Tenn., for original plaintiffs Citizens to Preserve Overton Park, Inc., Deupree and Snyder.

Michael R. Lackner, Memphis, Tenn., Paul Henry Kidd, Monroe, La., for plaintiff Sunshine Snyder.

H. Donald Harris, Jr., San Francisco, Cal., John W. Vardaman, Jr., Washington, D. C., and Charles F. Newman, Memphis, Tenn., for plaintiff Sierra Club.

Donald C. Hays, New York City, John W. Vardaman, Jr., Washington, D. C., and Charles F. Newman, Memphis, Tenn., for plaintiff National Audubon Society.

John W. Vardaman, Jr., Washington, D. C., Charles F. Newman, Memphis, Tenn., Robert M. Kennan, Jr., Washington, D. C., for plaintiff National Wildlife Federation.

Thomas F. Turley, Jr., U. S. Atty., James N. Raines, Asst. U. S. Atty., Memphis, Tenn., for defendant Volpe.

David M. Pack, Atty. Gen., State of Tennessee, Lurton C. Goodpasture, Jr., Asst. Atty. Gen., Nashville, Tenn., J. Alan Hanover, James B. Jalenak, Hanover, Walsh, Barnes & Jalenak, Memphis, Tenn., special counsel for defendant Speight.

Dale Woodall, Evans, Petree, Cobb & Edwards, Memphis, Tenn., for intervening defendants City of Memphis, Memphis Chamber of Commerce, Future Memphis, Inc., and Downtown Ass'n.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

This is an action to enjoin the Secretary of Transportation from releasing federal funds to the Highway Department of the State of Tennessee for construction of a segment of an interstate highway through Overton Park in Memphis. This Court granted summary judgment for defendants. 309 F.Supp. 1189 (1970). The Court of Appeals for the Sixth Circuit affirmed. 432 F.2d 1307 (1970). The Supreme Court reversed and remanded for a plenary review of Secretary Volpe's approval of the release of federal funds for this project in November, 1969. 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The evidentiary hearing was then held by this Court, and this Court's memorandum decision, filed January 5, 1972, is reported in 335 F.Supp. at 873.

In the memorandum decision, this Court held: (1) that Secretary Volpe had never actually made a route or corridor determination as is required by § 4(f) of the Department of Transportation Act of 1966, as amended, (49 U.S. C.A. § 1653(f))[1]; and (2) that even if Secretary Volpe had made such a determination, his determination was based on an incorrect view of the applicable law. Accordingly, we remanded to the Secretary to make a route determination in accordance with the applicable law.

---

[1]. An identical provision is contained in § 18(a) of the Federal-Aid Highway Act of 1968 (23 U.S.C.A. § 138).

We also ruled that the Secretary's approval of the proposed design of the interstate through Overton Park should stand and that he need not reconsider such approval.

There was no appeal of this Court's decision remanding to the Secretary.

On January 21, 1972, Secretary Volpe stated in a news release, in part:

"I have asked for a complete analysis of the entire record that was before the court, with particular attention to alternative locations for this highway. That analysis will be done in the context of a thorough, detailed environmental impact statement, which is required by the National Environmental Policy Act. Once this analysis is complete, a new decision will be made."

Thus the Secretary decided that, in making the determination under § 4(f) of the Department of Transportation Act of 1966, he must also comply with the National Environmental Policy Act of 1969, 42 U.S.C.A. § 4321 et seq., (NEPA). Secretary Volpe also decided to require additional route and design public hearings and such were held, combined, on September 14 and 15, 1972 in Memphis.

On January 12, 1973, the Acting Federal Highway Administrator wrote a memorandum to his superior, Secretary Volpe, attaching a 457 page final environmental impact statement prepared pursuant to NEPA. The memorandum concluded that it was the determination of that Administration under § 4(f) that there was no feasible and prudent alternative to the route through Overton Park and that the proposed design included all possible planning to minimize harm to the park.

On January 18, 1973, Secretary Volpe rendered his decision, which we quote in its entirety:

"SECRETARIAL DECISION ON I-40, OVERTON PARK MEMPHIS, TENNESSEE

In November 1969, I approved the designated route of I-40 through Overton Park in Memphis, Tennessee. The U.S. Supreme Court in March 1971 ruled that a lower court decision finding my approval in compliance with Section 4(f) of the Department of Transportation Act of 1966 was not substantiated by the record before the lower court. In January 1972, the U. S. District Court directed that the Department of Transportation make a new determination on this proposal in light of the Supreme Court decision.

This project has now been resubmitted by the State of Tennessee and come before me a second time for my approval. During the interim since my original action, the National Environmental Policy Act has been passed and signed into law. Thereafter the 1970 Federal Aid Highway Act added new requirements for consideration of environmental effects of highway projects, and in response to that requirement FHWA has set standards for the levels of noise around Federal aid highways. In addition, the Supreme Court, in its decision on this project, held that "protection of parkland was to be given paramount importance" and that "public parks were not to be lost unless there were truly unusual factors present" or "the cost or community disruption resulting from alternative routes reached extraordinary magnitudes." Each of these new developments has weighed in my deliberations.

On the basis of the record before me and in light of guidance provided by the Supreme Court, I find that an Interstate highway as proposed by the State through Overton Park cannot be approved. On that record I cannot find, as the Statute requires, and as interpreted by the courts, that there are no prudent and feasible alternatives to the use of parkland nor that the broader environmental protection objectives of the NEPA and the Federal-Aid Highway Act have been met, nor that the existing proposal would comply with FHWA standards on noise.

Among the possible alternatives which the State of Tennessee may wish to consider are the use of the I-240 circumferential combined with improvements to arterial streets, alternative routes such as the L & N Railroad corridor and a broadened use of public transportation facilities and services or combinations of the above to meet the transportation needs in and around Memphis. Apart from alternative locations, I am also convinced that a tunnel design would be less harmful to the park than the present design. Listing these possible alternatives should not, of course, be construed either as an endorsement of any of them or as an exclusion of any other alternative that I have not mentioned. Likewise it should not be construed as a finding that the "no build" alternative has been rejected.

/s/ John A. Volpe
Secretary of Transportation

18 January 1973"

The State defendant has filed a petition to remand to the Secretary of Transportation, contending that Secretary Volpe did not, in his decision of January 18, 1973, make the determinations required to be made by the statutes to which he referred in his decision. The Secretary and the plaintiffs contend that he did make such determinations required by the statutes. The petition for remand is now before this Court for decision upon responses thereto, argument of counsel and briefs.

The Federal-Aid Highway Act provides the statutory scheme for cooperation between the federal and state governments for construction of highways and for financial contributions thereto by the federal government. This statutory scheme is outlined in State Highway Commissioner of Missouri v. Volpe, Secretary, 479 F.2d 1099 (8th Cir. 1973), as follows (footnotes omitted):

"Congress deemed it within the 'national interest to accelerate the construction of the Federal-aid highway systems' to serve local and interstate commerce and to enhance national and civil defense. 23 U.S.C. § 101(b) (1970). The objective of the Act was the creation of a National System of Interstate and Defense Highways. The system was to be completed 'as nearly as practicable' over the period of twenty years on an expedited construction basis.

Based upon specific formulas set forth within the Act, the Secretary is required to apportion among the several states certain sums authorized to be appropriated for expenditures. 23 U.S.C. § 104(b). After the apportionment, the states, through their respective highway departments, are to submit programs of proposed projects based upon the apportioned funds. The Secretary is instructed in Section 105(a) to 'act upon programs submitted to him as soon as practicable after the same have been submitted.' Section 106(a) then provides that 'as soon as practicable after program approval,' specific 'surveys, plans, specifications, and estimates for each proposed project' will be submitted to the Secretary for his approval. In this regard, Section 106(a) specifically states that in approving the project plans 'the Secretary shall be guided by the provisions of section 109 of this title.' It is at this stage that the contract controls are imposed, for once a project is approved by the Secretary it 'shall be deemed a contractual obligation of the Federal Government for the payment of its proportional contribution thereto.' 23 U.S.C. § 106(a). On the basis of this approval, states are permitted to obligate the apportioned funds through the letting of construction contracts, etc. Section 118(b) provides that the sums 'available for expenditure' shall remain available for expenditure in that state for a period of two years after the close of the fiscal year for which the sums are authorized, and any funds not expended after that time shall

lapse, except that unexpended funds apportioned for the Interstate System shall 'immediately be reapportioned among the other States . . . .' The final stage of the Act is the appropriation by Congress of money from the Highway Trust Fund to pay the state the proportional federal share of construction costs incurred in the partial or total completion of the highway projects."

Thus it will be seen that under this statute the state highway departments plan highway projects that are submitted to the Department of Transportation for consideration and approval and funding.

§ 4(f) of the Department of Transportation Act of 1966 (as does § 18(a) of the Federal-Aid Highway Act of 1968) provides that ". . . the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park . . . unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park . . . .".

This provision, of course, does not, contrary to the statutory scheme created by the Federal-Aid Highway Act, shift to the federal Department of Transportation the burden of planning any highway projects. This provision does, however, impose upon the Secretary the additional burden, where a proposed project would use parkland, to determine whether there is, or is not, a feasible and prudent alternative. If he finds that there is no feasible and pru-

dent alternative and that the project satisfies the applicable law in other respects (including the other requirements contained in the Federal-Aid Highway Act), he approves the project. However, if he finds that there is a feasible and prudent alternative, then he must, for this reason alone, disapprove the project.

In his decision of January 18, 1973, while it is clear that Secretary Volpe did not find that there is no feasible and prudent alternative, it is equally clear that he did not find that there is a feasible and prudent alternative. He simply said that ". . . I cannot find . . . that there are no prudent and feasible alternatives to the use of parkland . . ." and goes on to suggest ". . . possible alternatives [2] which the State of Tennessee may wish to consider . . . ." [3]

Plaintiffs and the Secretary contend here that even though the Secretary did not find that there is no feasible and prudent alternative, he had no obligation to find that there is a feasible and prudent alternative. Plaintiffs further contend that there is only a "semantic difference" between a finding that there is a feasible and prudent alternative and his decision that "I cannot find" that there is no feasible and prudent alternative.

As heretofore stated, this Court is of the view that, contrary to the contention of plaintiffs and the Secretary, the Secretary was obligated to do more than to decide that he could not find that there was no feasible alternative. In this context, the Secretary was obli-

2. One of the Secretary's suggested alternatives, the so-called L & N Railroad corridor, was urged by the plaintiffs at the evidentiary hearing in this court as a feasible and prudent alternative. In our remand decision (335 F.Supp. 873), we rule that a decision by the Secretary that such is a feasible and prudent alternative would, under the evidence, be supportable.

3. The Secretary does not indicate in his decision that he was unable to make such finding because of an incomplete record.

Neither the plaintiffs nor the Secretary so contend here. In point of fact, at the time of this decision the Secretary had before him: (1) the administrative record that was before him at the time of his November, 1969 approval; (2) the transcript of the six-week trial in this court; (3) the transcript of the additional public hearings held in September, 1972 in Memphis; and (4) the final 457 page environmental impact statement prepared by his Department with the cooperation of the State of Tennessee.

gated to find that there was a feasible and prudent alternative. We reach this conclusion from the content of § 4(f) itself. Under this provision, the Secretary may not approve use of park land unless there is no feasible and prudent alternative. Thus if he approves use of park land, he must find there are no such alternatives; on the other hand, if he disapproves such use, he must find that there is such an alternative. Once the administrative record is, as it was here, sufficiently complete, the Secretary must make the decision, and if he refuses to do so, a decision may be compelled by a court. 5 U.S.C.A. § 706(1).

█ We are further of the view that not only was the Secretary, in this context, obligated to find that there is a feasible and prudent alternative, but also he was obligated to at least designate such alternative or alternatives. We reach this conclusion because such is necessary if the State defendant is to have effective judicial review of the Secretary's finding that there is a feasible and prudent alternative.[4] Obviously, a court could not review a finding that there is a feasible and prudent alternative, unless the Secretary designates what it is. This Court recognizes that the Supreme Court held in this case (401 U.S. at 417, 91 S.Ct. 814, 28 L.Ed. 2d 136) that formal findings are not necessary, and that therefore the Secretary need not give reasons for finding that a designated alternative is a feasible and prudent one.

In his decision of January 18, 1973, Secretary Volpe also said ". . . I cannot find . . . that the broader environmental protection objectives of NEPA and the Federal-Aid Highway Act have been met, nor that the existing proposal would comply with FHWA [Federal Highway Administration] standards on noise."

█ This Court concludes that Secretary Volpe was obligated, in this context, to find that the Overton Park route or design violated the provisions of NEPA and the Federal-Aid Highway Act and the standards with respect to noise of the Federal Highway Administration. This Court further concludes that the Secretary was obligated to at least designate the respects in which such provisions would be violated by the construction of this project. We reach these conclusions for the same reasons that we reached such conclusions with respect to the Secretary's § 4(f) determination.

█ As heretofore stated, in our remand decision of January 5, 1972, we ruled that the Secretary was not required to reconsider his approval of the proposed design of the route through Overton Park. It is obvious that the Secretary did reconsider such design. It is still this Court's view that, since we have heretofore ruled that the Secretary's approval of the design should stand, the present Secretary need not reconsider it. It is also our view that, since a Secretary of Transportation has never made a valid route decision, the present Secretary may, in his discretion, reconsider the design decision.

Under these circumstances of long delay and the familiarity of the officials in the Department of Transportation with this record, this Court is of the view that the remand order should require a decision within 45 days.

A remand order will be prepared for entry.

---

4. Neither plaintiffs nor the Secretary contend that the Secretary's disapproval of the use of park land is not subject to judicial review. In any event, we conclude that it is subject to such review, under 5 U.S.C.A. § 701, for the same reasons that the Supreme Court held in this case that the Secretary's approval of the use of park land in November, 1969, was subject to review under that provision.