CITIZENS TO PRESERVE OVERTON PARK, INC., William W. Deupree, Sr., Sunshine K. Snyder, Plaintiffs,

Sierra Club and National Audubon Society, Inc.

v.

John A. VOLPE, Secretary of Transportation,

and

Charles W. Speight, Commissioner, Tennessee Department of Highways, Defendants.

Civ. A. No. C–70–17.

United States District Court, W. D. Tennessee, W. D.

Feb. 26, 1970.

John W. Vardaman, Jr., Washington, D. C., and Charles F. Newman and W. J. Michael Cody, Memphis, Tenn., for plaintiffs Citizens to Preserve Overton Park, Inc., Deupree and Snyder.

H. Donald Harris, Jr., San Francisco, Cal., for plaintiff Sierra Club.

Donald C. Hays, New York City, for plaintiff National Audubon Society.

Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., for defendant Volpe.

Lurton Goodpasture, Jr., Asst. State's Atty. Gen., Nashville, Tenn., and J. Alan Hanover, Memphis, Tenn., for defendant Speight.

## MEMORANDUM DECISION AND JUDGMENT

BAILEY BROWN, Chief Judge.

This is an action to enjoin the Secretary of Transportation from releasing federal funds to the Highway Department of the State of Tennessee for construction of a segment of an expressway in the City of Memphis through Overton Park, which is a municipally owned and operated park used for a zoo and other recreational purposes. Plaintiffs Deupree and Snyder are residents, property owners and taxpayers in the City of Memphis; plaintiff Citizens To Preserve Overton Park, Inc., is a non-profit corporation organized and operated by Memphians for the purpose indicated by its name; plaintiffs Sierra Club and National Audubon Society, Inc. are non-profit corporations organized and operated to promote conservation. Defendant John A. Volpe is Secretary of Transportation and defendant Charles W. Speight is Commissioner of the Tennessee Department of Highways.

This action was filed in the District Court of the District of Columbia against defendant Volpe alone; thereafter, upon argument of his motion to dismiss and before decision thereon, that Court transferred the cause to this court in order that defendant Speight could be joined as such. This has since been done.

This court then set for hearing on February 20, 1970 both plaintiffs' motion for a temporary injunction and defendant Volpe's motion to dismiss. Defendant Volpe, prior to the hearing, also filed a motion for summary judgment, in which defendant Speight joined at the hearing, and this motion, rather than the motion to dismiss, was argued at the hearing. The motions for summary judgment and the motion for a temporary injunction are based on a large number of affidavits, including exhibits thereto, and not only have we studied such affidavits and exhibits but also we have had the benefit of extensive argument.

Plaintiffs contend that the Secretary's final formal approval in November, 1969 of the involved project (which approval is necessary before the federal funds to be contributed, amounting to 90% of the total cost, can be released) is void because he did not follow procedures prescribed by statute and by regulation issued by the Bureau of Public Roads. They further contend that such approval is void because his determination, as required by statute, that this is the only feasible and prudent corridor for the expressway and his determination, as also required by statute, that all possible design safeguards have been taken to protect the park are arbitrary and capricious determinations.

Defendants contend that plaintiffs do not have standing to maintain this action, which contention we can forthwith overrule at least as to plaintiff Citizens To Preserve Overton Park. This organization through its officers and members has actively participated for some years in administrative proceedings for selection of the corridor and design of the expressway. Nashville I–40 Steering Committee v. Ellington,

387 F.2d 179 (6th Cir.1967) and South Hill Neighborhood Ass'n, Inc., et al. v. Romney et al., 421 F.2d 455 (6th Cir. decided November 24, 1969).

Defendants also contend that the record shows without dispute: (1) that the prescribed procedures were complied with; (2) that, even if there was a deviation from prescribed procedures, there was substantial compliance with them; (3) that any deviations from such procedures were harmless errors; (4) that if there was any deviation, such was a deviation only from the procedures prescribed by the Bureau of Public Roads in a Policy and Procedure Memorandum, which need not be followed as would a regulation; and (5) that the prescribed procedures upon which plaintiffs rely did not apply to the selection of the corridor for the expressway since such selection had been made prior to the promulgation of the procedures. Defendants, finally, deny that defendant Volpe's approval of this project, either as to corridor or design, was arbitrary and capricious.

We deal first with plaintiffs' contention that the Secretary's approval is void because of procedural defects in the administrative proceedings.

With respect to their contention that statutory and regulatory procedures were not complied with, plaintiffs rely on 23 U.S.C. § 128, which provides in part:

"(a) Any State highway department which submits plans for a Federal-aid highway project * * * going through, any city * * * shall certify to the Secretary that it has had public hearings, * * * and has considered the economic and social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community. * * *

(b) When hearings have been held under subsection (a), the State highway department shall submit a copy of the transcript of said hearings to the Secretary, together with the certification."

In this connection, plaintiffs further rely on Policy and Procedure Memorandum 20–8 of the Bureau of Public Roads, which is Appendix A to Title 23 C.F.R., Chapter I, Part 1. The relevant provisions are as follows:

"§ 8 Public hearing procedures.

\* \* \* \* \* \*

(b) Conduct of public hearing.

\* \* \* \* \* \*

(2) Provision shall be made for submission of written statements and other exhibits in place of, or in addition to, oral statements at a public hearing. The procedure for such submission shall be described in the notice of public hearing and at the public hearing. * * *"

(e) Transcript.

\* \* \* \* \* \*

(1) The State highway department shall provide for the making of a verbatim written transcript of the oral proceedings at each public hearing. It shall submit a copy of the transcript to the division engineer within a reasonable period * * * after the public hearing. * * *"

Section 10 of Policy and Procedure Memorandum 20–8 further provides that the corridor and design of an expressway will not be approved until the requirements of the Memorandum have been complied with.

It is undisputed that the notice of the May, 1969 hearing which was run in a local newspaper did not indicate that written statements could be submitted at the hearing. It is also undisputed that the equipment which was set up at the hearing for transcribing the proceedings malfunctioned so that some of the statements at the hearing were not included in the transcript that was sent to the Bureau of Public Roads. It is

plaintiffs' contention that, with such defects in the notice and in the transcription, there was a deviation from the prescribed procedures and that therefore the approval of the project is void. It is, on the other hand, undisputed that all who appeared and whose oral statements were not transcribed were advised by certified mail that they could file a statement, that several of them did file such statements, and that a total of about forty statements were filed after the hearing. Further, plaintiffs have not even alleged, let alone shown by affidavit or otherwise, that there were persons who desired to make a statement but who did not do so because of lack of notice, or that there was any fact, argument, theory or position in support of another location or in support of another design which had not been, or at the hearing was not advanced to the state and federal authorities.

■ We recognize the requirement that an administrative agency follow its own procedural regulations. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L. Ed.2d 1012 (1959). We further assume that the involved Policy and Procedure Memorandum should, for this purpose, be treated as a regulation. While doing so, however, we might say that we have considerable doubt that the Policy and Procedure Memorandum was intended to have the effect of a regulation. The preface to this Memorandum explicitly states that it was not being issued as a new part to the Bureau's regulations and was being made an Appendix to Part 1 to obtain for it the broadest distribution. This Memorandum is not included in the Code of Federal Regulations.

■ This Court has jurisdiction under 5 U.S.C. § 706 to determine whether the Secretary's approval is void because of procedural defects. This statute provides in part that agency action

may be set aside if it is done "without observance of procedure required by law." However, a proviso to all of Section 706 is that the court shall view the whole record and take due account of the rule of prejudicial error. If a procedural error is harmless, the court is without authority to set aside an administrative determination.

At the outset it should be said that the May, 1969 hearing here attacked by plaintiffs, was only a design hearing rather than a corridor hearing, though the notice indicated it was to deal with both location and design. That this was only a design hearing was made completely clear at the hearing, and indeed the corridor had long since been approved and much of .the right-of-way had been acquired prior to this design hearing. Accordingly, a corridor hearing was not required at that time (PPM 20–8 § 6(d)), and any defect in the procedure then could only affect the approval of the design.

Plaintiffs did not, at argument, seriously press the failure to obtain a full transcript of the May, 1969 hearing as a basis for the injunction sought here. Apparently they concluded that the offering of the opportunity to file written statements later constituted a substantial compliance, with which we agree.[1]

With respect to the failure of the newspaper notice to advise of the right to submit written statements, we believe that the undisputed facts show that there was substantial compliance with the regulation requiring such notice in that so many interested persons, including members of Citizens To Preserve Overton Park, were advised by mail of the right to file such statements and in that so many such statements were received after the hearing. After all, the whole purpose of the provision for filing

1. It should be noted that the statute (23 U.S.C. § 128(b)) only requires that "a copy of the transcript" be submitted and PPM 20–8 requires only that the "State highway department provide for the making of a verbatim written transcript * * *." and that a transcript be furnished. It is arguable that a verbatim transcript had been *provided for* even if not accomplished.

such statements is to get all points of view before the Bureau and the Secretary and the undisputed facts show that this was accomplished.

■ We also conclude that, to the extent that the transcript and notice provisions were not literally complied with, on the undisputed facts this was harmless error. As we noted before, plaintiffs have not even alleged, let alone shown by affidavit or otherwise, that there were persons who desired to make a statement but who did not do so because of lack of notice, or that there was a fact, argument, theory or position in support of another design which had not been, or at the hearing was not advanced to the state and federal authorities. Further, we note that the corridor hearing in 1961 and the design hearing in 1969 were well attended and that interested persons who were fully prepared expressed objections and described alternatives to both the corridor and the design. Accordingly, the defendants are entitled to summary judgment on these issues.

Plaintiffs next rely on 23 U.S.C. § 138 which provides in part:

"§ 138. *Preservation of parklands.* It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands * * *. * * * [T]he Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park * * * of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof * * * unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, * * * resulting from such use."

The same provision is contained in 49 U.S.C. § 1653(f).

■ Plaintiffs contend that such statute requires that the Secretary publicly articulate an explicit finding that there is "no feasible and prudent alternative" and that "such program includes all possible planning to minimize harm to such park." It is undisputed that the Secretary did not make such a finding but there is no such requirement in the statute, and in the absence of such requirement we will not imply one.

More seriously, plaintiffs contend that the determinations by the Secretary, in approving the project, that there were no feasible and prudent alternatives and that all possible planning had been included to minimize harm to the park were arbitrary and capricious determinations. It is clear that we have jurisdiction to entertain this contention. 5 U.S.C. § 706; Road Review League, Town of Bedford v. Boyd, 270 F.Supp. 650 (S.D.N.Y.1967).

■ The legislative history of the amendment to §§ 138 and 1653(f) makes it clear that it was not the intent of Congress to prohibit the building of an expressway through a park if there was *any* alternative; rather, by providing that such should not be done if there is any feasible and prudent alternative, it was the intent of Congress to avoid the park if, after considering all relevant factors, it is preferable to do so. In short, it appears to have been the intent of Congress to point up the wisdom of conserving park lands and the lack of wisdom in routing an expressway through a park because the land is cheaper and the construction is easier. As stated in Report of House Managers (U.S.Code Cong. & Adm.News, 90th Cong., 2d Session, 1968, p. 3538):

"This amendment of both relevant sections of law is intended to make it unmistakably clear that *neither* section constitutes a mandatory prohibition against the use of the enumerated lands, but rather, is a discretionary authority which must be used with both wisdom and reason. The Congress does not believe, for example, that substantial numbers of people should be required to move in order

to preserve these lands, or that, clearly enunciated local preferences should be overruled on the basis of this authority [Appendix I]."

█ With respect to the reference to the "clearly enunciated local preferences" in the foregoing statement, it should here be pointed out that the Mayor and Council of the City of Memphis have heretofore approved this corridor and design and have approved the sale of this strip through Overton Park to the State of Tennessee for $2,209,000. The land has been conveyed and paid for. Of this amount, $1,000,000 has already been spent for a 160 acre golf course; $209,-000 will be spent on the zoo; and the balance of $1,000,000 must by law be expended to acquire other park land. Also, the Memphis Park Commission, which had disapproved of the corridor, acquiesced after it was approved by the Mayor and Council and the Commission has approved the design as being the best one for the park. Since § 138 by its terms is invoked only if the park "is of local significance as determined by Federal, State or local officials having jurisdiction thereof," in view of the approval by the Mayor and Council, it may well be that § 138 simply has no application here.

The affidavits show without dispute, in addition to the foregoing, that the corridor and design have been under official and public discussion for many years; that the corridor chosen as the only feasible and prudent one was determined to be such by the federal, state and city authorities and by Harland Bartholomew and Associates, a private consulting firm which has handled the city planning of Memphis since 1924; that the design has been approved by federal, state and local authorities as being the most practicable design to protect the park and zoo in all respects and

that the Park Commission is of the opinion that, with such design, the park and zoo will not be functionally impaired.[2] All of the property along the proposed corridor has been condemned, most of the buildings within the expressway path have been destroyed, and the persons and businesses affected have been relocated. It is completely clear that, with respect to corridor and design, those who made the decisions did not confine their considerations to cost and engineering problems but rather considered all factors including the intangible values in a park and zoo.

█ We recognize that normally a motion for summary judgment should not be granted if it is made properly to appear that a determinative fact is in dispute. Here, however, we would not, at a plenary hearing, have for determination whether there is a feasible and prudent alternative to the corridor or whether there is a reasonable alternative to the design that would protect the park more. These are determinations to be made by the Secretary of Transportation, and he has decided that no such alternatives exist. We could be concerned with the question and only the question of whether or not the determinations as made were arbitrary and capricious. Our study of the affidavits and exhibits on file convince us that, from the undisputed facts, we could never find in this case that, as contended by plaintiffs, such determinations are so wrong as to be arbitrary and capricious. This being so, we conclude that defendants are entitled to summary judgment on this issue as well as the other issues in the case.

It is therefore ordered that the motion of plaintiffs for a temporary injunction be denied and that the motion of defendants for summary judgment be granted and the action is dismissed.

2. Although the statute requires that all "possible" planning be done to minimize harm to the park, plaintiffs conceded at argument that a rule of reason is applicable here. However, they urged that

it would not be unreasonable to expend an extra 107 million dollars for a bored tunnel if such would be at all advantageous to the park.