# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
May 12, 2015 Session

## PAM HAYES, ET AL. v. CITY OF MEMPHIS, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-13-0785-3     Kenny W. Armstrong, Chancellor

---

### No. W2014-01962-COA-R3-CV – Filed August 21, 2015

---

This appeal involves a dispute stemming from a resolution adopted by the Memphis City Council renaming three public parks. Several organizations and individuals filed a lawsuit challenging the validity of the resolution. The Shelby County Chancery Court dismissed the lawsuit, holding that the allegations in the plaintiffs' complaint were insufficient to establish their standing. On appeal, we hold that the allegations of the complaint are sufficient to establish standing as to one of the organizations, Sons of Confederate Veterans Nathan Bedford Forrest Camp #215. We therefore reverse the trial court's dismissal as to that organization. We affirm dismissal of the remaining plaintiffs' claims for lack of standing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Douglas Edward Jones, Barbara J. Perutelli, and Teresea Joux Neisen Maniatis, Nashville, Tennessee, for the appellants, Pam Hayes, Debbie Lewis, Harry Adams, Neal Bumpus, Jim Brown, John Ellis, Mike Daugherty, Jack Smith, Adam Schmuck, Kevin Bradley, Brooks Bradley, Jesse Bradley, Sons of Confederate Veterans, Sons of Confederate Veterans Nathan Bedford Forrest Camp #215, and Citizens to Save Our Parks, Inc.

Brandy S. Parrish and Allan J. Wade, Memphis, Tennessee, for the appellees, City of Memphis and Memphis City Council.

# OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from a complaint challenging the validity of a resolution adopted by the Memphis City Council to rename three historic public parks. Prior to the events that led to this appeal, the parks in question were named Forrest Park, Jefferson Davis Park, and Confederate Park in honor of Confederate soldiers and notable individuals from the Civil War.[1] According to the parties' filings, Forrest Park was named by ordinance in 1899, and Jefferson Davis Park was named by resolution in 1930. The record is not clear as to the procedure used to name Confederate Park, though the parties' filings indicate that the park was commonly known by that name after a Confederate Veterans' reunion was held on its grounds in 1901. As time passed, opposition to the park names emerged in light of societal conflicts regarding whether and how those who fought for the Confederacy should be remembered. Though several individuals proposed renaming the parks through the years, the names remained unchanged through 2012.

On February 4, 2013, a bill was introduced in the Tennessee General Assembly to enact the Tennessee Heritage Protection Act of 2013.[2] The proposed legislation would limit the authority of governing bodies to rename parks named for or dedicated in honor of any historical military figure or event.[3] Recognizing the potential limitation on its

---

[1] As noted in the plaintiffs' filings, Confederate Park was named in honor of Confederate soldiers who served in the Civil War and is located on a site where Memphians gathered to witness a naval battle between Union and Confederate forces in 1862; Jefferson Davis Park was named for Jefferson Davis, who served as a United States Senator from Mississippi and United States Secretary of War prior to the Civil War and served as President of the Confederate States of America; Forrest Park was named for Nathan Bedford Forrest, a Lieutenant General in the Confederate Army ("General Forrest").

[2] TN H.R. Jour., 2013 Reg. Sess. No. 5.

[3] As originally introduced, House Bill 553 provided in pertinent part that:

> (1) No statue, monument, memorial, nameplate, or plaque which has been erected for, or named or dedicated in honor of, [a major American military conflict], and is located on public property, may be relocated, removed, altered, renamed, rededicated, or otherwise disturbed.
>
> (2) No statue, monument, memorial, nameplate, plaque, historic flag display, school, street, bridge, building, park, preserve, or reserve which has been erected for, or named or dedicated in honor of, any historical military figure, historical military event, military organization, or military unit, and is located on public property, may be renamed or rededicated.

H.B. 553, 108th Gen. Assemb., (Tenn. 2013).

The Tennessee Heritage Protection Act of 2013 was later signed into law, effective April 1, 2013, and was codified at Tennessee Code Annotated section 4-1-412 (Supp. 2014). In its final version, the statute contains the provisions quoted above, among others, and allows entities exercising control of

authority to change their names in the future, the Memphis City Council passed a resolution to rename the three historic parks the following day, February 5, 2013. The resolution stated:

> WHEREAS, from time to time, the Memphis City Council has seen fit on rare occasions to name certain public facilities, including parks, to honor citizens who have served this community; and
>
> WHEREAS, State Representative Steve McDaniel has sponsored HB0553, the so called "Tennessee Heritage Protection Act of 2013"; and
>
> WHEREAS, the Tennessee Heritage Protection Act of 2013 would forbid the City of Memphis, a home rule municipality, from relocating, removing, altering, renaming or rededicating, or otherwise disturbing any "statue, monument, memorial, nameplate or plaque" in Confederate Park, Jefferson Davis Park, and Nathan Bedford Forrest Park; and
>
> WHEREAS, the Tennessee Assembly is moving rapidly to limit the authority of the City of Memphis to name parks within the City; and
>
> WHEREAS, the legislation would limit the ability of the City to name these three parks, and it does not contemplate that the state would maintain the parks; they would continue to be funded by city funds; and
>
> WHEREAS, if the City does not take action with respect to these three parks, the City of Memphis may lose the ability at these three parks to honor any citizens who have (or may in the future) serve this community in some exceptional way.
>
> NOW, THEREFORE, BE IT RESOLVED BY THE COUNCIL OF THE CITY OF MEMPHIS THAT:
>
> Pursuant to Section 579.1 of the City Charter, the Council of the City is authorized and has full and ample power by ordinance or resolution to limit, restrict and to change or to terminate the use or operation of any property owned by or dedicated by the city for park purposes. The Council may by ordinance or resolution name or rename any park under the City's jurisdiction and control and may designate all appropriate markers, statutes or other references for any such park so named or renamed.

public property to petition the Tennessee historical commission for a waiver of its application. Tenn. Code Ann. § 4-1-412(c).

In accordance with its authority, the Council renames:

(1)  Nathan Bedford Forest (sic) Park as "Health Sciences Park";
(2)  Confederate Park as "Memphis Park";
(3)  Jefferson Davis Park as "Mississippi River Park"; and
(4)  The Division of Parks & Neighborhoods (or the Division's designee) shall be responsible for immediately affixing all suitable identifying signs and markers of the new names.

BE IT FURTHER RESOLVED BY THE COUNCIL OF THE CITY OF MEMPHIS that this Resolution shall immediately take effect from and after the date it shall have been passed by the Council.

### *Trial Court Proceedings*

On May 29, 2013, an organization called Citizens to Save Our Parks, Inc. ("CSOP") and a group of its individual members filed a complaint against the City of Memphis (the "City") and the Memphis City Council (the "City Council") in the Shelby County Chancery Court challenging the validity of the resolution and seeking declaratory relief. Later, an organization called Sons of Confederate Veterans ("SCV International"), along with its local chapter, Sons of Confederate Veterans Nathan Bedford Forrest Camp #215 ("SCV Camp #215"), and several of General Forrest's descendants ("Forrest descendants") were added as plaintiffs in the lawsuit. After a number of filings and several hearings, the plaintiffs collectively filed their second amended complaint, which is at issue in this appeal.

### *Second Amended Complaint*

The plaintiffs filed their second amended complaint on October 21, 2013.[4] The complaint alleges that CSOP is a non-profit historical preservation group located in Memphis and that many of its individual members have visited the three parks to study the parks' history. It alleges SCV International is dedicated to ensuring that the history of the Civil War period is preserved for future generations by preserving and maintaining historical sites and monuments related to the Civil War and by providing educational programs, historical research, and other services. It alleges SCV International's local Memphis chapter, SCV Camp #215, was organized in 1900 with the primary purpose of promoting and educating people about the life and history of General Forrest.

The complaint alleges that, for years, each of the plaintiff organizations and their

---

[4]Throughout the remainder of this opinion, the plaintiffs' second amended complaint is referred to as the "complaint."

members assisted in the preservation and maintenance of the parks by organizing "work days" and funding the purchase and installation of various markers, statues, monuments, and educational panels in each of the three historic parks.[5] Notably, it alleges that in 2009, SCV Camp #215 began raising funds to purchase and install a name marker in Forrest Park. It alleges that in 2011, members of SCV Camp #215 met with representatives from the Shelby County Historical Commission and the City's Division of Park Services to discuss the design and location of the proposed marker. According to the complaint, during the discussions, Cynthia Buchanan, the Director of Park Services, indicated that she supported the idea because it would enhance the park without using taxpayer funds. Director Buchanan suggested that the marker say "Forrest Park," rather than "Forrest," as originally proposed and that the inscription on the reverse side of the marker should include the name of "Memphis Park Services" as a partner in the project. In March 2011, Director Buchanan approved the marker's location and design in a letter sent to the City's Chief Administrative Officer and the Park Services Administrator of Planning and Development.

According to the complaint, the Forrest Park name marker was installed in May 2012 and formally dedicated to the City in July 2012. In its final design, the marker is ten feet long and eighteen inches high with the words "FORREST PARK" inscribed in ten inch letters. It has a concrete foundation and weighs over 3,000 pounds. The reverse side of the marker contains the following inscription: "Erected by: Memphis Park Service, Shelby County Historical Commission, NBF Camp #215 Sons of Confederate Veterans." The complaint alleges that the total cost to purchase and install the Forrest Park name marker was approximately $8,235 and that funding for the marker was raised solely by SCV Camp #215. Despite the group's efforts, the name marker's time in the park was short. According to the complaint, the City removed the name marker from Forrest Park on or around January 8, 2013, just months after its installation. During the next meeting of the City Council's Parks Subcommittee on January 22, 2013, members of SCV Camp #215 were present and requested an official inquiry into the reason for the marker's removal. The complaint alleges that during the meeting, members of the subcommittee discussed the possibility of having the equestrian statue of General Forrest removed as well and requested that parties interested in the removal of the Forrest Park

---

[5]For instance, the complaint alleges that: the plaintiffs organized a "work day" at Forrest Park each year before an annual event commemorating General Forrest's birthday; in 1905, SCV Camp #215's predecessor organizations raised over $28,000 to commission the 9,500 pound equestrian statue of General Forrest that stands in Forrest Park; in 2002, SCV Camp #215 raised $800 to install headstones for the graves of General Forrest and his wife, both of whom are buried in Forrest Park; in 2002, SCV Camp #215 raised $1,200 to place a marker in Forrest Park honoring General Forrest's grandson, who served as a General in World War II; in 2008, SCV Camp #215 raised $1,700 to place a panel in Confederate Park depicting scenes from the 1862 naval battle at Memphis; and in 2012, SCV Camp #215 raised $75,000 and coordinated with the Riverfront Development Corporation to place four full-scale replicas of Civil War cannons in Confederate Park.

name marker attend its next meeting on February 5, 2013.

According to the plaintiffs' complaint, during the February 5, 2013 meeting, members of the Parks Subcommittee first introduced the idea of changing the names of Confederate Park, Jefferson Davis Park, and Forrest Park. That afternoon, at the City Council's regular meeting, two ordinances were introduced on first reading to the City Council—one proposing to change Forrest Park to "Forrest-Wells Park," and one proposing to change Forrest Park to "Ida B. Wells Park," Confederate Park to "Front Street Park," and Jefferson Davis Park to "North Riverside Park." According to the complaint, neither of the ordinances was passed because they had not been read in open sessions of the council on three different days as required by law. The complaint alleges that rather than comply with the formalities necessary to enact a valid ordinance, the City Council then passed the resolution changing Forrest Park to "Health Sciences Park," Confederate Park to "Memphis Park," and Jefferson Davis Park to "Mississippi Park."

The complaint alleges that the City Council's renaming resolution is invalid for two reasons. First, the complaint alleges that the City Council lacked authority to change any of the three park names by resolution because it transferred jurisdiction, control, and authority over the City's public parks, including the authority to rename the parks, to Park Services by ordinance in 2000. Separately, the complaint alleges that the City Council lacked authority to rename Forrest Park by resolution because that park was originally named by ordinance and therefore could only be renamed by a subsequent ordinance.

The complaint alleges that the plaintiffs suffered several injuries as a result of the renaming resolution. The complaint alleges that as a direct result of the resolution's passing, SCV International decided not to hold its 2016 national convention in Memphis, costing SCV Camp #215 approximately $56,000 in lost profits. It alleges that the resolution's passing deprived the Forrest descendants of their interest in preserving the Forrest Park name as a memorial to their relative. It alleges that the plaintiffs were injured by the detrimental impact renaming the parks would have on their efforts to preserve and illuminate the historical significance of the parks and the individuals they were originally intended to commemorate. The complaint also alleges that the Forrest Park name marker was damaged during its removal.

To redress their injuries, the plaintiffs requested that the court issue a judgment declaring the City's and City Council's actions unlawful, illegal, and without statutory authority; specifically declaring the renaming resolution null, void, and invalid; declaring the removal of signage from the parks to be illegal and invalid; requiring the City to replace signage at the parks and make appropriate changes to all public signage, directories, and websites; and declaring that the City lacks authority to further remove

6

any signs, statutes, markers, or other historic items from the parks.

*Motion to Dismiss and Trial Court Order*

The defendants responded by filing a motion to dismiss the complaint in which they asserted that the complaint actually contained two separate claims: one challenging the City Council's authority to pass a resolution renaming the three parks and one challenging the City's authority to remove the Forrest Park name marker. With regard to the former, the defendants argued the plaintiffs lacked standing to challenge the renaming resolution because they had not suffered a sufficiently distinct injury related to the renaming of the parks. As to CSOP, the defendants also asserted the organization could not have suffered an injury from the parks' renaming because it was not incorporated until May 2013, several months after the passage of the renaming resolution. Alternatively, the defendants argued that even if the plaintiffs had standing to challenge the resolution, the complaint should be dismissed because the city charter conferred authority on the City Council to rename the parks by resolution. The defendants' argument regarding removal of the Forrest Park name marker is less clear. Initially, they stated in a footnote that "[t]he City's argument pertaining to standing is applicable to the first claim only, as the SCV Plaintiffs have standing to challenge the City's removal of the name marker or other property placed in the park by them." Later in the motion, however, the defendants asserted that "Plaintiffs have not alleged any concrete, particularized and special injury as a result of the removal of signage in the three parks." Thus, it is not clear whether they conceded that the plaintiffs have standing to challenge the removal of the name marker or argued that the plaintiffs lack such standing. In any event, the defendants' primary argument with regard to removal of the Forrest Park name marker was that the claim must fail because the City has "complete and full control and management over all parks," which included the authority to remove or alter any signage or property found in the parks.

The plaintiffs filed a response to the defendants' motion to dismiss as well as an affidavit of Knox Martin, the former President and current Secretary and Treasurer of CSOP. The affidavit contained statements related to the organization's formation intended to rebut the defendants' assertion that because it was incorporated in May 2013, it could not have been injured. According to the affidavit, although not formally incorporated until May 2013, the CSOP organization was formed in 1999 with the purpose of preserving the names and contents of historical parks in Memphis, and CSOP had been actively involved in the preservation of the three parks at issue since that time. It also detailed the organization's successful opposition to several past efforts to change the names of the three parks.

Following a hearing on the matter, the trial court entered an order granting the

7

defendants' motion to dismiss on August 6, 2014. The court separately analyzed the allegations in the complaint with respect to each group of plaintiffs and determined that none of the allegations were sufficient to confer standing to challenge the renaming resolution. As to CSOP, the court stated that despite the assertion that its stated purpose was to preserve the park names, the organization lacked sufficient involvement with the parks to establish standing. Additionally, as to both CSOP and the individual plaintiffs, the court concluded that despite their efforts to preserve and maintain the parks by organizing work days, the only injury they were alleged to have suffered from the renaming was "the erasure and elimination of significant parts of the cultural history of Memphis and its negative impact on historical tourism." The court concluded that "this alleged injury [is not] sufficiently distinct to establish standing." As to the Forrest descendants, the court concluded that "changing the name does not cause a concrete injury to these parties or affect their right or legal relation to such an extent to establish standing." As to SCV Camp #215, the court concluded that despite the group's efforts to promote the historical significance of the parks, their claims regarding "the erasure of history and destruction of public information about the city's historical parks does not constitute a concrete and particularized injury which is essential to establish standing." Additionally, the court concluded that SCV Camp #215's allegation of lost profits from the decision of SCV International to hold its 2016 convention in Texas rather than Memphis was "too speculative" to constitute a concrete injury. The trial court noted that the allegations related to SCV Camp #215 overlapped with those related to SCV International and therefore concluded that SCV International also lacked standing. In light of its conclusions, the court dismissed the plaintiffs' claims related to the renaming resolution. Next, the court concluded that although SCV Camp #215 had a "special interest" in the Forrest Park name marker, the City was free to do whatever it pleased with the marker, including acting to remove it from Forrest Park, because no conditions were placed on its dedication to the City. Thus, the court also dismissed the plaintiffs' claims related to the removal of the name marker.

The plaintiffs filed a timely notice of appeal.

## II. ISSUES PRESENTED

The plaintiffs state the following issue for our review:

1. Whether the Plaintiffs, both the individuals and organizations, have standing to bring a declaratory action against the Defendants based on the *ultra vires* renaming of Forrest Park, Confederate Park, and Jefferson Davis Park.

8

As an initial matter, we must determine the appropriate standard of review for the trial court's decision to dismiss the complaint. The defendants filed a motion seeking to dismiss the complaint pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. A Rule 12.02(6) motion presents a facial challenge to the complaint, testing only the legal sufficiency of the complaint itself and not the strength of the plaintiff's proof. *Davidson v. Bredesen*, 330 S.W.3d 876, 882 (Tenn. Ct. App. 2009). As such, the resolution of a Rule 12.02(6) motion to dismiss is limited to an examination of the allegations in the complaint alone. *Id.* If the parties submit extraneous facts in connection with a Rule 12.02(6) motion and the trial court chooses to consider them in making its decision, the motion to dismiss must be treated as one for summary judgment and disposed of in compliance with the procedural requirements of Rule 56 of the Tennessee Rules of Civil Procedure. Tenn. R. Civ. P. 12.02; *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 786 (Tenn. Ct. App. 2007).

Along with their response to the defendants' motion to dismiss, the plaintiffs submitted an affidavit by Knox Martin, the former President and current Secretary and Treasurer of CSOP. The statements in the affidavit related exclusively to CSOP and its standing to challenge the renaming resolution. In light of the trial court's reference to statements included in the affidavit in its order, we conclude that the trial court did not exclude the Martin affidavit and, therefore, that the defendants' motion must be treated as a motion for summary judgment under Rule 56 insofar as the grounds related to CSOP are concerned. However, to the extent that the motion asserted grounds under Rule 12.02(6) that related to other plaintiffs and were not addressed in the Martin affidavit, it should be treated as a motion to dismiss. "The difference between a motion to dismiss and a motion for summary judgment is more than academic when it comes to standard of review." *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001).

### Rule 12.02(6) Motions to Dismiss

A Rule 12.02(6) motion to dismiss challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Highwood Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). "The resolution of the motion is determined by an examination of the pleadings alone." *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010). Dismissal under Rule 12.02(6) is warranted only when the facts alleged will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity. *Pendleton*, 73 S.W.3d at 120.

A defendant who files a Rule 12.02(6) motion to dismiss "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the

allegations fail to establish a cause of action." *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)). Accordingly, the court reviewing the complaint must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true and giving the plaintiff the benefit of all inferences that can be reasonably drawn from the pleaded facts. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). On appeal, we must likewise presume the factual allegations in the complaint are true and review the trial court's legal conclusions regarding the adequacy of the complaint *de novo* with no presumption of correctness. *See Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013).

### *Rule 56 Motions for Summary Judgment*

A Rule 56 motion for summary judgment challenges the sufficiency of the nonmoving party's proof by asserting that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). Thus, if either or both parties submit matters outside the pleadings in support of or in opposition to a Rule 12.02(6) motion to dismiss, and the trial court does not exclude them, the motion should be treated as one for summary judgment, and all parties must be given a reasonable opportunity to present all material made pertinent to it. *See* Tenn. R. Civ. P. 12.02(6); *Staats v. McKinnon*, 206 S.W.3d 532, 543 n.14 (Tenn. Ct. App. 2006). In resolving such a motion, "[t]he moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin*, 271 S.W.3d at 83. Accordingly, a properly supported motion for summary judgment must demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* If the moving party fails to make the required showing, its motion must fail. *Id.*

If the moving party does make the required showing, the burden shifts to the nonmoving party to produce evidence of specific facts establishing that genuine issues of material fact exist. *Id.* at 84. The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party. *Id.* On appeal, we must likewise review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.* We review the trial court's resolution of a motion for summary judgment *de novo* with no presumption of correctness. *Id.*

## IV. DISCUSSION

The plaintiffs assert their standing to challenge the resolution renaming the parks pursuant to the Tennessee Declaratory Judgment Act. Specifically, they rely on Tennessee Code Annotated section 29-14-103 (2012), which, in relevant part, states that:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

The stated purpose of the Tennessee Declaratory Judgment Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tenn. Code Ann. § 29-14-113. Although the statute is to be liberally construed and administered, a declaratory judgment action cannot be used to decide a theoretical question or render an advisory opinion. *Mills v. Shelby Cnty. Election Comm'n*, 218 S.W.3d 33, 39-40 (Tenn. Ct. App. 2006) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000)). It is therefore necessary that certain limitations be placed on the operation of the statute. *Id.* at 39 (citing *Johnson City v. Caplan*, 253 S.W.2d 725, 726 (Tenn. 1952)). Accordingly, courts have held that to maintain an action for a declaratory judgment, a justiciable issue must exist. *Id.* at 40.

A justiciable issue is one giving rise to "a genuine, existing controversy requiring the adjudication of presently existing rights." *See UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007). Justiciability encompasses several distinct doctrines such as standing, ripeness, mootness, political question, exhaustion of administrative remedies, and the prohibition against advisory opinions. *Norma Fay Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 202 (Tenn. 2009). The doctrine at issue in this appeal is standing.

### *Standing*

The courts use the doctrine of standing to determine whether a particular litigant is "properly situated to prosecute the action." *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002) (quoting *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). The doctrine is grounded in "concern about the proper–and properly limited–role of the courts in a democratic society." *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006) (quoting *Warth v. Seldin*, 422 U.S.490, 498,

95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).  It precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed."  *Id.* at 619-20 (quoting *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001)).  The doctrine limits "the exercise of judicial power . . . to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate."  *Id.* at 620 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).  Without such a limitation, the courts would be called on to decide abstract questions of wide public significance beyond the province of the judiciary.  *Id.*

Two categories of standing govern who may bring a civil cause of action:  non-constitutional standing and constitutional standing.  *City of Memphis v. Hargett*, 414 S.W.3d 88, 98 (Tenn. 2013).  The primary focus of non-constitutional standing is on judicial restraint, including considerations of "whether a complaint raises generalized questions more properly addressed by another branch of the government, and questions of statutory interpretation, such as whether a statute designates who may bring a cause of action or creates a limited zone of interests."  *Id.*  Constitutional standing, the issue in this case, "is one of the 'irreducible . . . minimum' requirements that a party must meet in order to present a justiciable controversy."  *Id.*  (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001); *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 202-03 (Tenn. 2009) (noting that Tennessee courts' adoption of the various justiciability doctrines, including standing, has a basis in the separation of powers required under Article II, Sections 1 and 2 of the Tennessee Constitution)).

"[T]he irreducible constitutional minimum of standing" includes three elements. *Lujan*, 504 U.S. at 560.  First, the plaintiff must show a distinct and palpable injury, which is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  *Id.* (internal citations omitted); *see also Darnell*, 195 S.W.3d at 620.  The injury may not be "predicated upon an injury to an interest that the plaintiff shares in common with all other citizens."  *Darnell*, 195 S.W.3d at 620.  Second, there must be a causal connection between the claimed injury and the challenged conduct.  *Id.*  "While the causation element is not onerous, it does require a showing that the injury to a plaintiff is 'fairly traceable' to the conduct of the adverse party."  *Howe v. Haslam*, No. M2013-01790-COA-R3-CV, 2014 WL 5698877, at *6 (Tenn. Ct. App. Nov. 4, 2014) (*no perm. app. filed*) (quoting *Darnell*, 195 S.W.3d at 620).  Third, the plaintiff must show that the alleged injury is capable of being redressed by a favorable decision of the court. *Darnell*, 195 S.W.3d at 620.

An organization may have standing to assert an injury to it regardless of whether its members also have standing. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 544 (6th Cir. 2004) (citing *Warth*, 422 U.S. at 511 ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.")). Notwithstanding the absence of an injury to itself, however, an organization may also establish standing to sue solely as a representative of its members by showing that: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Darnell*, 195 S.W.3d at 626.

"It is important to note that standing does not depend upon a plaintiff's likelihood of success on the merits." *Id.* Rather, the standing inquiry requires a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Hargett*, 414 S.W.3d at 97 (quoting *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The court should inquire:

> Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

*Allen*, 468 U.S. at 752.

The party invoking the court's jurisdiction has the burden of establishing the elements of standing. *See Hargett*, 414 S.W.3d at 100-01. Because the elements are an indispensable part of the plaintiff's case, each "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 555. For example, to survive a facial challenge presented in a motion to dismiss, "[t]he facts pleaded [with respect to standing], and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." *Webb*, 346 S.W.3d 427 (quoting *Abshure*, 325 S.W.3d at 103-104).

Application of the foregoing principles to the complaint demonstrates that the plaintiffs alleged sufficient facts to establish that SCV Camp # 215 has standing to challenge the renaming of the parks by resolution. CSOP, the individual plaintiffs, the Forrest descendants, and SCV International, however, do not.

13

In this case, the plaintiffs challenge the renaming of the three parks by resolution rather than by ordinance. Generally, the adoption of a resolution contemplates some action less formal than that which would be undertaken by adoption of an ordinance. 5 Eugene McQuillen, *Law of Municipal Corporations* § 15:2 (3d ed.). As such, adoption of a resolution may be accomplished without the necessary formalities, solemnities, and characteristics of an ordinance. *Id.* For instance, Section 354 of the Memphis Charter provides in part that:

> No ordinances shall become effective until the same shall have passed at least three regular meetings of the [City Council], and shall have received at such meeting a majority vote of all of the members composing said board, and unless the same shall have been published in some newspaper circulated in Memphis, Tennessee, by one publication, the same to take place between the date of first and second readings of each ordinance.

The purpose of such procedural requirements is to prevent hasty and unconsidered action by an enacting legislative body. *See Biltmore Hotel Court v. City of Berry Hill*, 390 S.W.2d 223, 226 (Tenn. 1965) (examining the stated purpose of an analogous Kentucky law). They also afford interested parties an opportunity to study the proposed ordinance and make recommendations or, as the case may be, organize an effort in furtherance of or in protest to its enactment. *Id.*

Presuming the facts in the complaint are true, as we are required to do at this stage of the proceedings, it appears that the renaming of the parks by resolution rather than ordinance may have precluded meaningful public debate on the matter. According to the complaint, the possibility of changing the names of Confederate Park, Jefferson Davis Park, and Forrest Park was first mentioned at a Parks Subcommittee meeting on the morning of February 5, 2013. That afternoon, the City Council renamed all three park names that, in the case of Confederate Park and Forrest Park, had been in existence for over a century. The complaint alleges that the City Council's use of a resolution to rename the parks was undertaken to bypass the time-consuming formalities that ordinarily accompany adoption of an ordinance. Indeed, from the face of the resolution itself, it is clear that the City Council's action was calculated to take effect prior to enactment of the Tennessee Heritage Protection Act of 2013, which was being considered by the general assembly at the same time. Thus, while it was perhaps not the City Council's intent to preclude debate on the matter, taking the facts alleged as true, it appears that its use of a resolution rather than an ordinance had precisely that effect. Without deciding the issue of whether the City Council had the authority to rename the

parks by resolution,[6] we conclude that the allegations in the complaint are sufficient to establish that SCV Camp #215 has standing to challenge the City Council's action.

The defendants contend that even if the park should have been renamed by ordinance, SCV Camp #215, along with the other plaintiffs, do not have standing to challenge the renaming resolution because they failed to allege a distinct and palpable injury from its adoption. We respectfully disagree. In our view, the allegations in the complaint regarding the City's close involvement with SCV Camp #215 in the design and installation of the Forrest Park name marker lead to a reasonable inference that the City conferred on the organization a special interest in the Forrest Park name. We find guidance in reaching this conclusion from this Court's opinion in *Chickasaw Bluffs Conservancy v. City of Memphis*, No. 02A01-967-CH-00169, 1997 WL 135967 (Tenn. Ct. App. Mar. 25, 1997).

In *Chickasaw Bluffs*, a private developer sought approval from the City of Memphis to build a commercial and residential development on a bluff overlooking the Mississippi River. *Id.* at *1. During the approval process, the city council invited the Chickasaw Bluffs Conservancy, a citizen's group concerned with preserving public access to the bluff, to comment regarding the inclusion of a public walkway in the proposed development plans. *Id.* at *2. With the council's encouragement, the group remained involved in discussions with the developer regarding a proposed walkway over the course of several years. *Id.* at *2-3. After several failed attempts to do so, the group's representatives were able to negotiate an amendment to the developer's plan requiring the construction of the walkway. *Id.* In 1993, the city council approved the plan conditioned on construction of the walkway as described in their agreement, and the city entered into a contract with the developer that incorporated its terms and conditions concerning construction of the walkway. *Id.* at *3-4. Later, however, as the project was put out for public bids, the mayor expressed concerns about the walkway and indicated that he would not approve of its construction as called for in the plan. *Id.* at *4. In response, the group filed a lawsuit against the city seeking to enforce the contract between the city and developer. *Id.* at *1. On appeal, the city argued that the group lacked standing to compel action by the city. *Id.* at *7. This Court noted that the citizen group was formed with the express purpose of protecting the public's use of the property

---

[6]In their motion to dismiss, the defendants argued in the alternative that even if the plaintiffs had standing to challenge the renaming resolution, their complaint failed to state a claim because the City Council acted within its authority in adopting the resolution. Even though this issue was raised at the trial court level, we cannot fully analyze this issue because the trial court did not consider or rule on it. *See Copper Basin Fed. Credit Union v. Fiserv Solutions, Inc.*, No. E2012-02145-COA-R3-CV, 2013 WL 3421916, at *5 (Tenn. Ct. App. July 3, 2013) (*no perm. app. filed*) (citing *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . .")).

in question and that the mayor and city council both recognized the desirability and necessity for an entity to act in furtherance of that public good. *Id.* It noted that, but for the group's agreement with the developer regarding the walkway, the city council would not have approved the development. *Id.* Thus, the Court of Appeals concluded that because of the city's actions, the citizen group had standing because it suffered a special injury not common to the citizenry at large by the mayor's failure to act. *Id.*

Likewise, taking as true the allegations of the complaint, we conclude that because of the City's actions, SCV Camp #215 suffered a distinct and palpable injury not common to the citizenry at large by the City Council's adoption of the renaming resolution. The complaint alleges that SCV Camp #215 was formed with the express purpose of educating the public about the life and history of General Forrest. To that end, the complaint alleges that SCV Camp #215 has assisted in the preservation and maintenance of Forrest Park through the years by organizing work days and by funding the installation of various markers, statues, monuments, and educational panels in each of the three historic parks. While it stands to reason that the City may appreciate the groups' efforts in this manner, it does not appear from the complaint that the City has taken any action to encourage the majority of these efforts that could be construed as conferring a special interest in preservation of the park's name. However, the complaint reflects a much higher level of involvement by the City with regard to the funding and installation of the Forrest Park name marker. Taking the allegations in the complaint as true, it appears that the City recognized the desirability of having a new name marker installed in Forrest Park without using taxpayer funds and encouraged SCV Camp #215's efforts to do so. The Director of the City's Division of Park Services actively participated in the design of the name marker, approved its location, and even suggested that the name marker be inscribed to reflect that its installation was the result of a partnership between the Division of Park Services and SCV Camp #215.

The defendants contend that SCV Camp #215's interest in the Forrest Park name marker is distinguishable from its interest in the Forrest Park name itself. In their motion to dismiss, the defendants appeared to concede that SCV Camp #215 had a special interest in the Forrest Park name marker sufficient to establish standing.[7] The trial court reached a similar conclusion, stating that although the group had a special interest in the name marker, the City had the authority to remove it from the park because no conditions were placed on its dedication to the City. As the plaintiffs do not raise any issues specifically related to removal of the Forrest Park name marker on appeal, we address it

---

[7]As we stated previously, the defendants' argument on this point in their motion to dismiss is not clear. Initially, the defendants stated in a footnote that "the SCV Plaintiffs have standing to challenge the City's removal of the name marker or other property placed in the park by them." Later, however, the defendants stated that "Plaintiffs have not alleged any concrete, particularized and special injury as a result of the removal of signage in the three parks."

only to the extent that it relates to their standing to challenge the park's renaming. In our view, SCV Camp #215's special interest in the Forrest Park name *marker* necessarily confers a special interest in the Forrest Park *name*. Changing the name of Forrest Park without removing the ten-foot, 3,000 pound concrete marker with "FORREST PARK" inscribed on it would essentially be a meaningless effort.

Based on the foregoing, we conclude that, taking the allegations of the plaintiffs' complaint as true, the complaint establishes that SCV Camp #215 had a special interest in preserving the Forrest Park name such that it suffered a distinct and palpable injury from its renaming. Moreover, we can reasonably infer that the group's alleged injury is fairly traceable to the City Council's actions because the renaming of Forrest Park by resolution rather than ordinance may have deprived SCV Camp #215 of the opportunity to voice any meaningful opposition to it. Finally, we note that the injury to SCV Camp #215's interest in the Forrest Park name would be redressed by a favorable decision in this case. Because the allegations of the complaint are sufficient to establish each element of standing as to SCV Camp #215, we conclude that SCV Camp #215 has standing to challenge the renaming resolution.[8] We therefore reverse the trial court's judgment as to SCV Camp #215 and remand the case for such further proceedings as are necessary.

### *Remaining Plaintiffs*

Unlike SCV Camp #215, CSOP, the individual plaintiffs, the Forrest descendants, and SCV International lack standing to challenge the renaming resolution. In addition to *Chickasaw Bluffs*, the plaintiffs rely on *Citizens to Preserve Overton Park, Inc. v. Volpe*, 309 F. Supp. 1189 (W.D. Tenn. 1970), to argue that CSOP has standing. In *Volpe*, a plaintiff citizens group filed suit against the Secretary of the Department of Transportation challenging approval of plans to build an interstate highway through Overton Park in Memphis. *Id.* at 1191. The district court ruled that the citizen's group had standing to challenge the agency action because of their involvement in proceedings at the agency level. *Id.* at 1191-92. The plaintiffs contend that the injury suffered by CSOP as a result of the renaming of the parks is analogous to the injuries suffered by the groups in *Chickasaw Bluffs* and *Volpe*. We respectfully disagree.

---

[8]For purposes of clarity, we note that SCV Camp #215's standing to challenge the Forrest Park name change confers standing to challenge the resolution as a whole. If, on remand, the trial court concludes that the City Council lacked authority to change any of the park names by resolution, the trial court should declare the resolution invalid as to all three name changes. Conversely, if the trial court concludes that the City Council only lacked authority to change the name of Forrest Park by resolution, the trial court should only declare the resolution invalid as to the Forrest Park name change. *See State v. Crank*, No. E2012-01189-SC-R11-CD, --- S.W.3d ---, --- , 2015 WL 603158, at *10 (Tenn. Feb. 13, 2015) (stating that under appropriate circumstances, a court may omit an invalid portion of a statute and find the remaining provisions to be effective) (citations omitted).

Though not explicitly set forth in the *Volpe* opinion, the citizen's group in that case had standing to initiate judicial review of actions by the Department of Transportation pursuant to federal statutes specifically recognizing the importance of environmental protection and intended to allow private persons to file federal court actions to protect park and recreation lands from arbitrary and capricious agency actions. *See* 23 U.S.C. § 138 ("It is declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands . . . ."); *see also La Raza Unida v. Volpe*, 337 F. Supp. 221, 232 (N.D. Cal. 1971) (holding that private plaintiffs who used parks and lived near parklands that might be damaged by construction of a highway had standing to bring a federal court action for declaratory and injunctive relief in regard to proposed highway). Similarly, in *Chickasaw Bluffs*, the city council explicitly recognized the necessity of the citizens group as a necessary voice for the public by actively facilitating negotiations between the group and the developer and even required the group's agreement before approving the development plans. In this case, even if we assume the truth of the statements contained in the Martin affidavit,[9] it does not appear that the City has taken any action to encourage the group's efforts that could be construed as conferring a special interest in preservation of the park names. CSOP contends that the City conferred standing by inviting CSOP to comment at Memphis Center City Commission meetings. The Martin affidavit makes it clear, however, that the general public was invited to comment during the meetings. Thus, CSOP cannot be said to have suffered any specialized injury not common to all other citizens by its participation in the meetings, and there is no genuine issue of material fact with respect to CSOP's standing.

Likewise, neither the complaint nor the Martin affidavit establishes that CSOP has standing to challenge the resolution on behalf of the individual plaintiffs or its other members. Although the complaint alleges activities undertaken by the individual plaintiffs to benefit the parks, it does not allege a distinct and palpable injury. In fact, the section of the complaint titled "INJURIES TO THE PLAINTIFFS" does not contain any specific allegation that CSOP or the individual plaintiffs suffered *any* injury from the renaming of the parks. While we can infer that the complaint's general allegations that renaming the parks will erase and eliminate significant parts of the cultural history of Memphis and have a negative impact on its historical tourism are applicable to CSOP and the individual plaintiffs, those alleged injuries would be common to all citizens of Memphis and therefore not sufficiently distinct to establish standing.

---

[9]We note the defendants' argument that they were not given the opportunity to present material made pertinent to their motion by the factual assertions presented for the first time in the Martin affidavit as required by Rule 56. Without deciding the issue of whether, in light of the Martin affidavit, the trial court erred in failing to allow the defendants such an opportunity, we conclude that even if the statements of the Martin affidavit are taken as true and considered alongside the allegations in the complaint, they are still not sufficient to establish CSOP's standing under the lower motion to dismiss threshold.

The injuries alleged to SCV International in the complaint are also not sufficient to confer standing. The complaint alleges that in an effort to further their organizational purposes of preserving history and educating the public, SCV International (along with SCV Camp #215) funded the installation of various markers, statues, monuments, and educational panels in the parks. The plaintiffs contend that by changing the park names, the defendants deprived SCV International of the benefit of its efforts and expenditures because the parks lost their identifying link to history and the historical sites within them will be harder for the public to locate. We agree with the trial court's conclusion that these alleged injuries were not sufficient to constitute a distinct and palpable injury. The renaming of the parks has little, if any, impact on the group's ability to continue educating the public on Civil War history. The complaint does not allege that SCV International contributed to the purchase and installation of the Forrest Park name marker. The other markers, statues, monuments, and educational panels funded by the group remain in the parks and are available for viewing by the public. Finally, the plaintiffs' contention that renaming the parks will make those sites more difficult for the public to locate is purely conjectural and cannot serve as the basis for standing.

Lastly, the complaint fails to allege any injury to the Forrest descendants sufficient to confer standing. With regard to the Forrest descendants, the complaint alleges as follows:

6. Plaintiffs Kevin Bradley, Brooks Bradley, and Jesse Bradley are great grandsons of Nathan Bedford Forrest; they are residents and citizens of Shelby County, Tennessee.

7. Plaintiff John Ellis is the great grand nephew of Nathan Bedford Forrest.

. . . .

157. Forrest Park was dedicated to the memory of the Forrest Descendant Plaintiffs' relative, Nathan Bedford Forrest. The Forrest Descendant Plaintiffs have a vested interest that the name Forrest Park be preserved. Those interests will be lost if the Defendants *ultra vires* actions are allowed to proceed.

The plaintiffs' assertion that, by naming the park for General Forrest, the City conferred on his descendants a legally cognizable interest in preservation of the park's name is a legal conclusion, which, even on a motion to dismiss, we are not required to accept as true. *See Webb*, 346 S.W.3d at 427 ("[C]ourts are not required to accept as true

19

assertions that are merely legal arguments or 'legal conclusions' couched as facts."). The plaintiffs have not cited any authority that supports their assertion on this point, nor has our research revealed any such authority. Nevertheless, as we stated previously, in order to establish standing, a plaintiff must show a distinct and palpable injury to a legally protected interest. *Darnell*, 195 S.W.3d at 620. The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. The Forrest descendants have not alleged any concrete injury as a result of Forrest Park's renaming or the City's method for doing so. In our view, there is no injury inherent in the renaming of a park dedicated to an individual's relative. The existence of a familial relationship between a party and the namesake of a public park is not, without more, sufficient to create a legally cognizable interest in preservation of the park's name. As such, we agree with the trial court's conclusion that the complaint does not allege any injury to the Forrest descendants sufficient to confer standing.

## V. CONCLUSION

The underlying issue in this case involves complex cultural and social concerns that generate strong passions on both sides. While we appreciate the depth of those feelings, it is not within the purview of this Court to resolve the larger cultural issue of whether or how those who fought for the Confederacy should be honored or remembered. Rather, it is the function of this Court to resolve the legal dispute between the parties according to principles of law. Our decision should not be viewed as an endorsement of either the City's decision to change the park names or the plaintiffs' desire to preserve them.

In summary, the complaint demonstrates that SCV Camp #215, but not CSOP, the individual plaintiffs, the Forrest descendants, or SCV International, has standing to challenge the City Council's resolution renaming the historic parks. The judgment of the trial court is therefore affirmed in part and reversed in part, and this cause is remanded for such further proceedings as are necessary. Costs of this appeal are taxed one-half to the Appellees, City of Memphis and Memphis City Council, and one-half to the Appellants, Pam Hayes, Debbie Lewis, Harry Adams, Neal Bumpus, Jim Brown, John Ellis, Mike Daugherty, Jack Smith, Adam Schmuck, Kevin Bradley, Brook Bradley, Jesse Bradley, Sons of Confederate Veterans, Sons of Confederate Veterans Nathan Bedford Forrest Camp #215, and Citizens to Save Our Parks, and their surety, for which execution may issue, if necessary.

_____
BRANDON O. GIBSON, JUDGE